**Hortantsa HEREDIA and Gloria Schultze**

v.

**Edward A. GREEN.**

**Civ. A. No. 80–1342.**

United States District Court,
E. D. Pennsylvania.

Dec. 1, 1980.

---

**23.** See note 16, *supra.*

Eric L. Frank, Community Legal Services, Philadelphia, Pa., for plaintiffs.

Kenneth L. Baritz, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiffs Hortantsa Heredia and Gloria Schultze filed this action on behalf of themselves and all others similarly situated, alleging that defendant Edward Green, a Landlord and Tenant Officer of the Municipal Court of Philadelphia (L&T Officer), violates the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.*, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (State Act), Pa.Stat.Ann. tit. 73, §§ 201–1, *et seq.* (Purdon 1971), by sending copies of the "Municipal Court Notice of Termination of Lease" (the notice) to plaintiffs who were allegedly delinquent in rental payments on behalf of various landlords, charging plaintiffs "unauthorized" fees for this service, collecting rental payments for landlords from plaintiffs, and sending misleading "dunning" letters (the letters) after the notices were sent in order to obtain rental payments. Defendant does not deny any of these activities, but states that they are authorized by President Judge Glancey of the Municipal Court of Philadelphia and thus constitute official actions of an L&T Officer. By order of July 8, 1980 I permitted this action to be maintained as a class action. Before me are cross-motions for summary judgment.

The FDCPA proscribes numerous activities of "debt collectors," but excludes from the definition of "debt collector"

any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties . . .

15 U.S.C. § 1692a(6)(C). Defendant contends that his activities complained of in this action are excluded from the purview of the FDCPA by virtue of this section. Plaintiffs argue that defendant is not acting in his official capacity as an L&T Officer, but rather that his activities are those of a private debt collector, and that he is thus subject to the FDCPA. I conclude that defendant's activities at issue in this action constitute official duties of an L&T Officer, and are thus excluded from the FDCPA. In light of this conclusion, I need not determine whether those activities would be proscribed by the FDCPA were they conducted by a debt collector, although I seriously doubt that they contravene either the spirit or the letter of the FDCPA in any way. Further, it would be inappropriate for me to consider plaintiffs' pendent State Act claims in light of this conclusion, as federal jurisdiction is based solely on the FDCPA.

The position of L&T Officer was first created in 1969, when the Pennsylvania Legislature abolished the office of constable in the City of Philadelphia as part of a reform effort to eliminate widespread corruption in the old constable system. Unlike constables, who were elected and were otherwise accountable to no one, L&T Officers are appointed by the President Judge of the Municipal Court of Philadelphia, and serve at his pleasure. Pa.Stat.Ann. tit. 17, § 711.-26 (Purdon 1970 Supp.) (repealed 1968). Recognizing that the activities of constables are important elements of Pennsylvania's comprehensive Landlord and Tenant Act of 1951, Pa.Stat.Ann. tit. 68, §§ 250.101 et seq. (Purdon 1965), the Legislature specifically provided that L&T Officers "shall perform the duties heretofore performed by constables under the Landlord and Tenant Act of 1951 . . ." Pa.Stat.Ann. tit. 17, § 711.26 (Purdon 1970 Supp.) (repealed 1968). The only current statutory definition of L&T Officers' duties, Act 2 of 1970, contains a similar provision:

The duties heretofore performed by constables under the act of April 6, 1951 (P.L. 69), known as "The Landlord and Tenant Act of 1951," shall be performed by the landlord and tenant officers of the Municipal Court of Philadelphia.

1970 Pa. Laws 2. Plaintiffs argue that this provision establishes the exclusive official functions of L&T Officers, and that any activities they engage in which were not constabular activities under the Landlord and Tenant Act of 1951 are private activities not in the performance of their official duties. Because constables were not authorized to engage in the activities complained of herein by the Landlord and Tenant Act of 1951, plaintiffs argue that defendant's activities are not official duties of an L&T Officer.

■ I believe plaintiffs view Act 2 of 1970 too broadly. That act must be construed consistently with Pennsylvania's new Judicial Code, which provides that "each . . . Court may appoint and fix the compensation *and duties* of necessary administrative staff . . .", Pa.Cons.Stat.Ann. tit. 42, § 2301(a)(2) (Purdon 1980) (emphasis added), and that "the president judge of a court shall . . . promulgate all administrative rules and regulations . . . ." *id.* § 325(e)(1). In light of these provisions of the Judicial Code and the fact that L&T Officers serve at the President Judge's pleasure, and noting that Act 2 of 1970 nowhere states that L&T Officers shall perform *only* those duties which constables performed under the Landlord and Tenant Act of 1951, it is clear that Act 2 of 1970 was not intended to set forth the exclusive functions of L&T Officers, but rather was designed to assure that the comprehensive system for administering landlord-tenant relations established by the Landlord and Tenant Act of 1951 would not be vitiated by the abolition of the constable system in Philadelphia. Reading the Municipal Court Enabling Act, Act 2 of 1970, and the Judicial Code in conjunction, I must conclude that L&T Officers' official duties are those formerly performed by constables under the

Landlord and Tenant Act of 1951 as well as those established by the President Judge of the Municipal Court of Philadelphia.

■ At the deposition of The Honorable Joseph R. Glancey, President Judge of the Municipal Court of Philadelphia, conducted on August 25, 1980 (Glancey dep.), Judge Glancey explained why the procedures attacked in this action were implemented. Following the ruling of a Three Judge Court of the Eastern District of Pennsylvania in *Santiago v. McElroy*, 319 F.Supp. 284 (E.D.Pa.1970), L&T Officers were no longer permitted to levy or sell personal property of tenants alleged to be delinquent in rental payments without a hearing pursuant to distress provisions. As a result, a landlord's only means of collecting delinquent rent was to send the tenant a notice to quit and then initiate eviction proceedings. Thus, the Municipal Court was deluged with an unmanageable number of such proceedings, and, in those cases which were processed, tenants were often wrongfully evicted because they were afraid to appear in court or engage an attorney and thus generally suffered default judgments. Glancey dep. pp. 24–29. Thus Judge Glancey convened a task force to devise a procedure to protect the rights of all concerned. This group, consisting of Judge Glancey, Sharon Kaplan Wallis, plaintiffs' attorney in *Santiago*, John Kelly, head of the landlord-tenant panel of the Community Legal Services of Philadelphia, and Jerry Fineberg, representing the interest of landlords, devised the current system.[1] *Id.* at 26, 35. Under this system, L&T Officers rather than the landlords send the notice at issue in this action to tenants at the landlord's behest. The notice is designed to impress upon tenants that the municipal court is involved in the alleged delinquency, so as to obtain the tenant's attention and prompt response, and clearly explains that unless the delinquency

is paid, an eviction action will be commenced in the future. L&T Officers then fill out affidavits stating where and when they served the notices. This constitutes the requisite first step for an eviction proceeding, service of a notice to quit, thus facilitating initiation of such a proceeding should it later become necessary. *Id.* at 26–29. If the tenant contests the delinquency, he can either resolve the problem by contacting the L&T Officer or await filing and then contest the eviction proceeding. However, if the rent is indeed delinquent, he can make payment to an L&T Officer before institution of an eviction proceeding. *Id.* at 40–41. The task force considered this procedure equitable and manageable,[2] and, following Judge Simmons' approval,[3] L&T Officers were directed to send the notices by Judge Glancey. *Id.* at 36–48, 55. This directive was given because there was no statutory prohibition against such a procedure, and because it was the opinion of all concerned that use of the L&T Officers in this manner would serve the best interests of the tenants, the landlords and the Municipal Court. *Id.* at 39–40. Clearly, sending the notice and collecting delinquent rent is an official duty of defendant in his capacity as an L&T Officer.

Plaintiffs also complain that defendant charged them collection fees by listing fees as part of the amount due on the notices when collection of such fees is unauthorized. Judge Glancey stated that he specifically authorized collection of these fees in a letter to L&T Officers, and a copy of that letter is attached to the deposition transcript. The amounts of the fees involved in the case at bar are specifically authorized by the Constable Fee Bill, Pa.Stat.Ann. tit. 13 §§ 61 *et seq.* (Purdon 1967 and 1980 Supp.), and Judge Glancey authorized L&T Officers to collect those fees pursuant to

---

1. It is puzzling to note that Community Legal Services of Philadelphia, which helped devise this system, represents plaintiffs in this action in an effort to invalidate that system.

2. Judge Glancey noted that following initiation of this procedure, institution of eviction cases

fell from approximately 16,000 per year to approximately 2,500 per year. Glancey dep., p. 29.

3. Judge Simmons was then head of the court's Civil Rights Committee. *Id.* at 35.

the Constable Fee Bill. Glancey dep., p. 45. He authorized L&T Officers to collect fees from tenants where their leases provided for such payments, and otherwise from the landlords. *Id.* at 47. The lease of plaintiff Heredia attached to the complaint states in clause 6, entitled "additional rent", that the lessee is liable for "all sums which may become due by reason of the failure of Lessee to comply with any of the covenants of this lease ..." Clearly that clause makes plaintiff Heredia liable for the collection fees listed on the notice she received.[4] While the copy of plaintiff Schultze's lease attached to the complaint is incomplete, I take judicial notice of the fact that clauses of the kind quoted above are commonly included in form residential leases of the kind involved in this action. Thus defendant was clearly authorized to collect from plaintiffs the fees listed on the notices sent to plaintiffs, and was performing an official duty when he did so.

Finally, plaintiffs assert that defendant was acting improperly and outside the scope of his official duties when he sent a letter other than the notice to plaintiff Heredia, and presumably other members of the plaintiff class, after the notice failed to generate payment of delinquent rent.[5] Despite plaintiffs' characterization of this letter as a "dunning" letter, my examination thereof shows that it simply restates the amount of the rent due, notes the date upon which defendant has been instructed to initiate eviction proceedings, and provides a telephone number through which any questions concerning the matter can be resolved. Clearly, sending the letter conforms with the plan formulated by Judge Glancey and his task force. While Judge Glancey did not specifically authorize mailing of that particular form of letter, *id.* p. 51, it is clear that the procedure of which that mailing is a part is authorized. The letter merely provides the tenant a last chance before eviction proceedings are commenced, and,

as discussed above, the L&T Officers' involvement in sending notices and collecting rent was specifically designed by Judge Glancey to prevent initiation of eviction proceedings. Thus I find that defendant's sending the letter to plaintiff, Heredia, and presumably to other members of the plaintiff class, constitutes performance of his official duty as an L&T Officer.

For all of these reasons, the activities which are the subject of this action were engaged in by defendant in performance of his official duties, and thus do not fall within the purview of the FDCPA. Thus plaintiffs' motion for summary judgment must be denied, and defendant's motion for summary judgment must be granted.

---

**4.** Plaintiffs' assertion in their memorandum that their leases contained no clauses making them liable for payment of fees generated by collection of delinquent rent is thus less than candid.

**5.** Nowhere in plaintiffs' voluminous filings do they contend that the rent defendant sought to collect was not due the landlords on whose behalf it was solicited.