HEREDIA, Hortantsa, and Schultze, Gloria, individually and on behalf of all others similarly situated, Appellants,

v.

GREEN, Edward A., Appellee.

No. 81–1116.

United States Court of Appeals, Third Circuit.

Argued Sept. 18, 1981.

Decided Dec. 22, 1981.

As Amended Jan. 5, 1982.

Eric L. Frank (argued), Bruce Fox, Community Legal Services, Inc., Law Center Northeast, Philadelphia, Pa., for appellants.

Kenneth L. Baritz (argued), Feinberg & Baritz, Philadelphia, Pa., for appellee.

Before GIBBONS and HUNTER, Circuit Judges, and STERN,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

Plaintiffs Hortantsa Heredia and Gloria Schultze brought suit on behalf of themselves and all others similarly situated, alleging that defendant Edward A. Green, a Landlord and Tenant Officer ("L&T Officer"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (1979), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"), 73 P.S. § 201–1, et seq. (Purdon 1971) by engaging in allegedly illegal collection activities. Specifically, plaintiffs object to the defendant serving copies of a document headed "Municipal Court Notice of Termination of Lease" (the "Notice"), on behalf of various landlords, to tenants who are allegedly delinquent in rental payments, and for charging tenants "unauthorized" fees for this service.

We must decide whether the defendant Green was acting in the performance of his official duties when he sent the Notices to the plaintiffs. Such a determination would, by virtue of 15 U.S.C. § 1692a(6)(C), exempt his actions from the proscriptions of the debt collecting provisions of the FDCPA. The district court 504 F.Supp. 896 concluded that Green's activities were in the performance of his official duties and were thus outside the scope of the FDCPA and declined to reach plaintiffs state law claims. We affirm.

## FACTS

Defendant Green is a Landlord and Tenant Officer of the Pladelphia Municipal Court. He was appointed to the position by President Judge Glancey of that court on March 20, 1970. Over the past three years, Green has served the Notices in question upon many tenants in the City of Philadelphia.

The Notice sent to tenants is basically of the same form in all cases, but differs in the name of the landlord, the name of the tenant(s), and the amount of rent and late charges claimed due. Appendix at 1–18a. The landlord provides Green with all the information necessary to complete the form. It is completed by Green soon after the landlord contacts him, whether by telephone or in person. The Notice, which contains a Municipal Court seal bearing the words "Landlord & Tenant Officers of Municipal Court," demands full payment of all fees, late charges, and unpaid rent within five days. Payment is to be made by the tenants at Green's office. The Notice states that eviction proceedings will then be instituted in Municipal Court, if payment is not received within five days.

President Judge Glancey expressly authorized Green to use the form of the Notice in question. The Notice was served upon both plaintiffs pursuant to separate written lease agreements. Although the Municipal Court does not provide the forms nor pay for them, they are approved for form and content by the Philadelphia Municipal Court. The Notice provides for certain fees for "services," "travel" and "receiving payment." Defendant Green has no authority to charge any fees other than those specifically authorized by the President Judge of the Municipal Court.

In the case of the named plaintiffs, defendant Green received a telephone call from each of their respective landlords. Plaintiff Heredia's landlord called on January 4 and 18, 1980. For a fee of $9.50, Green agreed to send Heredia Notices which were mailed the same day. On January 18, 1980, Green received a telephone call from Brunner Real Estate, landlord of plaintiff Schultze. For a fee of $8.00, he agreed to send her a Notice which was mailed the same day.

Both named plaintiffs received the Notices in question as a result of their failure to pay rentals in accordance with their writ-

---

* Honorable Herbert J. Stern, United States District Judge for the District of New Jersey, sitting by designation.

ten lease agreements. That both named plaintiffs owe back-rent to their landlords is undisputed.

## PROCEDURAL HISTORY

This action was brought by plaintiffs on April 4, 1980. Plaintiffs sought declaratory and injunctive relief for themselves and the unnamed members of the plaintiff class. In addition, they sought actual and statutory damages for themselves. Defendant Green filed an answer to the complaint on June 16, 1980. It became apparent to the parties that the requirements of Fed.R.Civ.P. 23(a) and (b)(2) were met; on June 30, 1980 plaintiffs filed an uncontested motion for class certification which was approved by the district court. The class certified was "all individuals who have received or may receive forms entitled 'Municipal Court Notice of Termination of Lease' as part of an attempt by defendant Green to collect unpaid rent." Appendix at 1–40a.

On August 7, 1980, Green filed a motion for summary judgment asserting that his collection activities were outside the purview of both the FDCPA and PUTPCPL. Plaintiffs then filed a cross-motion for partial summary judgment seeking judgment on the issues of liability, injunctive relief and statutory damages, and reserving the issue of actual damages for trial.

After considering the motion and cross-motion, the district court entered a Memorandum Opinion and Order on December 1, 1980. Appendix at 1–56a. The court concluded that Green's activities were outside the scope of the FDCPA; therefore, it granted defendant's motion and denied plaintiffs' cross-motion. The district court refused to exercise pendent jurisdiction over plaintiffs' state law claim and so never

reached the merits of that issue.[1] On December 22, 1980, plaintiffs filed this appeal.

## DISCUSSION

The FDCPA proscribes various activities of debt collectors, but excludes from the definition of "debt collector"

> any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties.

15 U.S.C. § 1692a(6)(C). Green contends that the activities objected to by plaintiffs in this action are excluded from the FDCPA by this section. Plaintiffs argue that Green is not acting in his official capacity as an L&T Officer, but rather that his activities are in essence those of a private debt collector and are therefore subject to scrutiny under the FDCPA. The district court concluded that Green's activities did constitute official activities, and were thus excluded from the proscription of the FDCPA. We agree. We also agree that because of this conclusion, we need not decide whether the activities in question would be proscribed by the FDCPA were they conducted by a private debt collector. Further, we need not consider plaintiffs' pendent state claims. *See Rogin v. Bensalem Township*, 616 F.2d 680, 697 (3d Cir. 1980).

Plaintiffs argue that an L&T Officer has exactly the same duties as did a constable under the Landlord and Tenant Act of 1951, 68 P.S. § 250.101 *et seq.* They cite 17 P.S. 711.26 (Purdon 1970 Supp.) (repealed 1968; reenacted at 42 Pa.C.S.A. §§ 325(e)(2), 1726, 2301 (1976))[2] and the statutory definition of an L&T Officer's duties in Act 2 of 1970[3] in support of their argument.

---

**1.** Plaintiffs do not challenge the district court's refusal to consider the state law claim as an abuse of discretion: "If the district court was correct in rejecting the federal claim, its failure to exercise pendent jurisdiction would not be an abuse of discretion." Appellants' Brief at 4. The granting of defendant's motion obviated the need to reach any damages issues.

**2.** 17 P.S. 711.26 provided in pertinent part that L&T Officers "shall perform the duties hereto-

fore performed by constables under the Landlord and Tenant Act of 1951 . . . ."

**3.** Act of February 10, 1970, P.L. 2, No. 2. Section 1 of Act 2 of 1970 may be found at 42 P.S. § 1062.1 (transferred to 13 P.S. § 15). Section 2 was never codified. The relevant section provides:

> The duties heretofore performed by constables under the Act of April 6, 1951 (P.L. 69), known as "The Landlord and Tenant Act

We reject this interpretation as too narrow. Under Pennsylvania's new Judicial Code, "each ... Court may appoint and fix the compensation *and duties* of necessary administrative staff...." 42 Pa.C.S.A. § 2301(a)(2) (Purdon 1980) (emphasis added). The Code also provides that: "the President Judge of a court shall ... promulgate all administrative rules and regulations...." 42 Pa.C.S.A. § 325(e)(1). Construing the statutes cited by plaintiffs with the new Judicial Code leads to the conclusion that the duties of an L&T Officer are not exactly the same as those of a constable under the old statute.

Defendant Green was appointed a Landlord and Tenant Officer of the Philadelphia Municipal Court by President Judge Glancey pursuant to 42 Pa.C.S.A. § 2301.[4] Thus, the defendant is appointed to and can be removed from his position by the President Judge, and performs his duties pursuant to orders and instructions from the President Judge. These factors all lead to the conclusion that Green's serving of the Notices, as approved by President Judge Glancey, was one of his official duties.

Furthermore, the President Judge has specifically authorized his Landlord and Tenant Officers to serve the Notice in question. The L&T Officer has little discretion in this regard. The order from the President Judge authorized and instructed the Officer to serve the Notice when requested to do so by a private landlord in Philadelphia. Appendix at 2–108a.

Finally, it is important to note that not only the form of the notice in question but also the entire procedure involved in this case was designed and approved by the President Judge. There is an important governmental interest served by this procedure that we should not disturb. President Judge Glancey explained[5] *why* the procedures attacked in this action were implemented. After *Santiago v. McElroy*, 319 F.Supp. 284 (E.D.Pa.1970), L&T Officers were no longer permitted to levy or sell personal property of tenants alleged to be delinquent in rental payments without a hearing pursuant to distraint provisions. As a result, a landlord's only means of collecting delinquent rent was to send the tenant a notice to quit and then initiate eviction proceedings. Thus, the Municipal Court was flooded with an unmanageable number of such proceedings.

President Judge Glancey convened a task force to devise a procedure that would improve upon this system.[6] Under this system the L&T Officer serves the Notice, which is then filed of record with the Administrator of the court. This action constitutes the first step for an eviction proceeding, service of Notice to Quit, thus providing the necessary predicate for such a proceeding should it later become necessary. If the tenant contests the issue, he can either contact the L&T Officer or await filing and then contest the eviction proceeding. Furthermore, if the rent is indeed delinquent, he can make payment to an L&T Officer before institution of an eviction proceeding. President Judge Glancey testified that following the initiation of this procedure, institution of eviction cases fell significantly.

---

of 1951 (§ 250.101 *et seq.* of this title)," shall be performed by the Landlord and Tenant Officers of the Municipal Court of Philadelphia.

4. Section 2301 provides:
   Appointment and removal of Landlord and Tenant Officers and Writ Servers for the Philadelphia Municipal Court shall be by the President Judge of that Court.
   Significantly, this provision does not say "removal for cause." The President Judge has a high degree of control over the L&T Officers. Under 17 P.S. § 711.26 (Purdon 1970 Supp.) (repealed 1978; reenacted at 42 Pa.C.S.A. §§ 325(e)(2), 1726, 2301 (1976)) the legislature explicitly provided that "... landlord and tenant officers shall serve *at the pleasure* of the president judge of the municipal court." (emphasis added). While the "at the pleasure" language does not appear in the reenacted version of the statute, neither does any "for cause" requirement.

5. Glancey deposition, Appendix at 2–79a.

6. The group consisted of President Judge Glancey, plaintiffs' attorney in *Santiago*, the head of the landlord-tenant panel of the Community Legal Services of Philadelphia, and a representative of the interest of landlords.

The task force considered this procedure equitable, and following Judge Simmon's[7] approval L&T Officers were directed to serve the Notices by President Judge Glancey. Appendix at 2–89a, 2–101a, 2–108a. It is clear to us that the entire procedure involves the L&T Officer in his official capacity and that there is a real governmental interest served, in terms of efficiency and sound management policy, by the procedure. We are not persuaded by plaintiffs' argument that because private landlords *could* send the notices themselves that therefore L&T Officers must be acting in a private capacity. The point is that the Notice is designed to impress upon tenants that the municipal court is involved, to assure the tenant's attention and prompt response, and to explain clearly that unless the delinquency is paid, an eviction action will be commenced in the future.

Plaintiffs also argue that Green improperly charged them collection fees by listing fees as part of the amount due on the notices when collection of such fees is unauthorized. The amounts of the fees involved in this case are specifically authorized by the Constable Fee Bill, 13 P.S. § 61 *et seq.* (Purdon 1967 and 1980 Supp.), and President Judge Glancey authorized L&T Officers to collect those fees in a letter to L&T Officers pursuant to the Constable Fee Bill. Appendix at 2–109a to 2–111a. Again, we agree with the district court that defendant was clearly authorized by the city court to collect from plaintiffs the fees listed on the Notices sent to plaintiffs, and was performing an official duty when he did so.

For the foregoing reasons, the decision of the district court will be affirmed.

STERN, District Judge, concurring:

Plaintiffs in this action seek to hold defendant Green, the sole defendant in this case, personally liable for money damages[1] for alleged violations of the Fair Debt Collection Practices Act. The alleged violations include sending a written notice which "simulated" and "falsely" represented itself to be a document authorized, issued, and approved by the Municipal Court of Philadelphia and which created a "false impression" as to its source, authorization and approval, in violation of 15 U.S.C. § 1692e(9); using an organizational name other than defendant's business, in violation of 15 U.S.C. § 1692e(14); and making "false representations" and using "deceptive" means to attempt to collect the debts for unpaid rent, in violation of 15 U.S.C. § 1692e(10), by creating the "false belief" that the Philadelphia Municipal Court was participating in the collection of plaintiffs' alleged debt. See Plaintiffs' Complaint, App. at 1–7a–8a.

I concur in Judge Hunter's opinion and fully agree with the result reached in this case. There is no question that defendant Green was authorized by President Judge Glancey to send the forms in question to tenants delinquent in rent payments as part of a scheme approved by the Philadelphia Municipal Court. Judge Glancey's authorization on behalf of the court conferred an "official" status on defendant's actions and there can be no doubt that defendant believed at all times that he was acting "officially."

Under those circumstances, to hold that defendant's activities were not exempt from coverage under the Act would produce an absurdly harsh result. Without the protection of the exemption to which he is entitled, defendant Green would be placed in the anomalous position of being exposed to personal monetary liability for deceptively giving the impression that he was acting as an officer of the court despite the fact that his actions and the notices themselves had indeed been authorized by that court.

Whether Judge Glancey was within or without his authority in making the designation is a different matter. That question

---

7. Judge Simmon was then head of the court's Civil Rights Committee.

1. Under 15 U.S.C. § 1692k(a), plaintiffs may recover any actual damage sustained by them as a result of defendant's failure to comply with the Act and additional damages as the court may allow up to $1,000.

is an issue of state law which is not within the province of this court to review in what amounts to a collateral attack. If, as plaintiffs claim, Judge Glancey was acting beyond his judicial power, their remedy lies in the appellate courts of Pennsylvania, not here.

GIBBONS, Circuit Judge, dissenting.

The Fair Debt Collection Practices Act, Pub.L. 95–109, 91 Stat. 874, 15 U.S.C. § 1692 (FDCPA), passed in 1977 as an amendment to the Consumer Credit Protection Act of 1968, Pub.L. 90–321, 82 Stat. 146, 15 U.S.C. § 1601 *et seq.*, is designed "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." Senate Report No. 95–382, 95th Cong., 1st Sess. 1–2, *reprinted in* [1977] U.S.News Cong. & Admin.News 1695, 1696. The legislation includes congressional findings that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" and that "[e]xisting laws and procedures for redressing these [resulting] injuries are inadequate to protect consumers." 15 U.S.C. § 1692(a), (b). Congress announced its purpose "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). In reporting on the bill which became law, the Senate Committee on Banking, Housing, and Urban Affairs noted that "[t]he primary reason why debt collection abuse is so widespread is the lack of meaningful legislation on the State level." Senate Report No. 95–382, *supra*, 2. *See also* Hearings Before the Subcommittee on Consumer Affairs of the Committee on Banking, Housing, and Urban Affairs on S. 656, S. 918, S. 1130 and H.R. 5294, 95th Cong., 1st Sess. 23–24 (1977) (Remarks of Sen. Annunzio). Both from the text of the FDCPA and from its legislative history it is clear that Congress intended to supplant unsatisfactory state regulatory schemes with a set of national minimum standards.

The FDCPA provides not only for private enforcement, 15 U.S.C. § 1692k, but also for administrative enforcement by the Federal Trade Commission. 15 U.S.C. § 1692*l*. Moreover, the Commission is given authority "by regulation to exempt from the requirements of this subchapter any class of debt collection practices within any State if the Commission determines that under the law of that State that class of debt collection practice is subject to requirements substantially similar to those imposed by this subchapter, and that there is adequate provision for enforcement." 15 U.S.C. § 1692*o*. Under the statutory scheme any local exemption must first be passed upon by the Federal Trade Commission. The report of the House Committee on Banking, Finance and Urban Affairs on H.R. 5294, in which originated the provisions relating to state exemptions, explains:

Concern has been voiced by some that the passing of Federal legislation in the debt collection area might infringe on States' rights. The committee has considered this matter and has taken steps to minimize any such infringement. For example, under Section 816, relation to State laws, the laws of any State with respect to debt collection practices will not be preempted except to the extent that those laws are inconsistent with any provision of this bill.

In addition, section 817 provides for exemption for State regulation. If a State has a debt collection law and would like an exemption, the State need only apply to the Federal Trade Commission and if the Commission determines that under the law of that State any class of debt collection practices is subject to requirements substantially similar to those imposed by this bill, and there is adequate provision for enforcement, an exemption would be granted.

.    .    .    .    .

The committee does not intend to preclude legislative experimentation by the States in the area of debt collection practices. Any State wishing to so experiment in passing strong legislation in this area will have a free hand to do so and may apply for an exemption under section 817.

H.R.Rep.No.95–131, 95th Cong., 1st Sess., 7, 8 (1977). Pennsylvania has neither sought nor obtained Federal Trade Commission approval for the collection practices of Landlord and Tenant Officers such as defendant Green. If an application were to be made the Commission would not approve it, because while 15 U.S.C. § 1692n preserves a role for state law not inconsistent with FDCPA, the saving clause is qualified by the provision that "[f]or purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is *greater than the protection provided by* [FDCPA]" (emphasis supplied). The Pennsylvania statutes and court rules governing Landlord and Tenant Officers fall far short of meeting that standard.

Under the Act the term "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Defendant Green falls squarely within this definition, for he uses the mails in a business the principal purpose of which is the collection, on behalf of landlords other than himself, of rents owed or asserted to be owed by tenants. Thus *prima facie* Green is one of the class whose activities Congress intended to regulate.

The majority opinion holds that Green's collection business is not covered by the FDCPA because, although he acts as a rent collector for landlords, he has been designated by the Municipal Court of Philadelphia as an "official" and is thus within the exemption clause of 15 U.S.C. § 1692a(6). That opinion explains that the "official" designation was devised by the municipal court as a means for diverting from its doors the large number of eviction actions which resulted when the judgment in *Santiago v. McElroy*, 319 F.Supp. 284 (E.D.Pa. 1970), put an end to ex parte distraints for rent. Thus the very purpose of the "official" designation was to increase the efficiency of private debt collectors so as to reduce the incidence of resort to the formal processes of the court. In considering whether the mere designation of a private debt collector as an "official" should place him outside the reach of the FDCPA it should be noted that the Federal Trade Commission Guides and Trade Practice Rules dealing with debt collection deception include this prohibition:

An industry member shall not use any trade name, address, insignia, picture, emblem, or other means which creates a false impression that such industry member is connected with or is an agency of government.

16 C.F.R. § 237.3 (1981). What the Municipal Court has done is to clothe Green with a designation which is intended to permit him to pretend that he is acting on behalf of the Court, when in fact he is acting, in his collection activities, solely on behalf of his principals, the landlords. The Philadelphia scheme [1] operates as a plain subversion of the Federal Trade Commission regulation. Moreover, the majority's interpretation of FDCPA cannot be confined to debt collectors who collect for landlords. The majority reasons that because the Municipal Court had an interest in stemming the flow of eviction actions it could, under Pennsylvania law, encourage rent collection outside the court system by designating the landlords' agent as an "official". Obviously all the state courts have the same caseload interest with respect to all debt collection cases. Thus all private debt collections can, under the majority's reasoning, be made

---

1. The scheme exists only in Philadelphia County. See Rules Governing Standards of Conduct of Constables, Pa.Stat.Ann. tit. 13, App. (Purdon Supp. 1981–82). It was adopted prior to the enactment of the FDCPA.

"official" merely by prescribing a form and designating its user an "official." And if a state should do so, according to the majority, all debt collectors in that state would be exempt from the FDCPA and from the enforcement and regulatory jurisdiction of the Federal Trade Commission. Such a construction of a federal regulatory statute designed to remedy perceived defects in state regulation is simply irrational.

In arriving at a plainly irrational result the majority relies on a part of the definitional section of the statute. That section is hardly a model of clarity. In reading it, however, one cannot take a clause out of context and give it a meaning which is inconsistent with the overall purpose of the legislation. Rather, if the definitional section is ambiguous our effort should be to interpret it in a manner which preserves rather than destroys the legislative purpose; which preserves the role of the Federal Trade Commission in passing on state regulation rather than permits states to bypass that agency by subterfuge. The definitional section can be and should be so interpreted. Following the broad definition of "debt collector" quoted above, the Act provides:

The term does not include—

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors;

(F) any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client; and

(G) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6). The Senate Report explains what Congress intended by the definition and the exclusions:

The committee intends the term "debt collector," subject to the exclusions discussed below, to cover all third persons who regularly collect debts for others. The primary persons intended to be covered are independent debt collectors. The requirement that debt collection be done "regularly" would exclude a person who collects a debt for another in an isolated instance, but would include those who collect for others in the regular course of business. The definition would include "reciprocal collections" whereby one creditor regularly collects delinquent debts for another pursuant to a reciprocal service agreement, unless otherwise excluded by the act.

The term debt collector is not intended to include the following: "in house" collectors for creditors so long as they use the creditor's true business name when collecting; *Government officials, such as marshals and sheriffs, while in the conduct of their official duties; process servers;* nonprofit consumer credit counsel-

ing services which assist consumers by apportioning the consumer's income among his creditors pursuant to a prior arrangement; and attorneys-at-law while acting in that capacity. One subsidiary or affiliate which collects debts for another subsidiary or affiliate is not a "debt collector" so long as the collecting affiliate collects only for other related entities and its principal business is not debt collection.

Finally, the committee does not intend the definition to cover the activities of trust departments, escrow companies, or other bona fide fiduciaries; the collection of debts, such as mortgages and student loans, by persons who originated such loans; mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing; and the collection of debts owed to a creditor when the collector is holding the receivable account as collateral for commercial credit extended to the creditor.

Sen.Rep.No.95–382, 95th Cong., 1st Sess. 3–4, *reprinted in* [1977] U.S.Code Cong. & Admin.News 1695, 1697–98. (Emphasis supplied). The quoted discussion in the Senate Report suggests that exemptions (C) and (D) were intended to be read *in pari materia*, and to exempt the activities of court officials engaged in the enforcement of judicial process.[2] That interpretation is consistent with exemption (F) dealing with lawyers. The broad definition, the overall scheme of the statute, and the limited purposes of the exemptions all strongly suggest that subsection (C) was not intended to exempt debt collectors operating at the stage of the collection process before a lawsuit is commenced. Certainly the definitional section cannot have been intended to permit a state to circumvent the Federal Trade Commission's jurisdiction by designating private debt collectors as "officials."

In *F.T.C. v. Shaffner*, 626 F.2d 32, 36 (7th Cir. 1980), the court dealt with a similar effort to read one of the definitional exceptions in a manner that would defeat the Commission's jurisdiction. In that case an attorney who operated a collection agency resisted enforcement of an agency subpoena on the ground that exemption (F) applied. The court observed:

> While the statute clearly excludes "any attorney-at-law collecting a debt as an attorney on behalf of one in the name of a client" from the definition of "debt collector," it does not state that an attorney, by reason of mere possession of a license to practice law, is not subject to the compulsory process of the FTC. The statutory exclusion does not merely say "any attorney-at-law," it says "any attorney-at-law collecting a debt as an attorney on behalf of a client." While the exclusion is not a narrow one, it is readily apparent that Congress did not intend to vest in every attorney a right to be free from investigation. Needless to say, many who hold licenses to practice law, do not practice law, but engage in other businesses. We do not believe Congress intended to shield one debt collection business from investigation simply because it is owned by an attorney, while subjecting other debt collectors to scrutiny by the FTC.

I would interpret exemption (C) similarly. Congress intended to exempt court personnel engaged in enforcement of the court's processes, because except for 15 U.S.C. § 1692i, which fixes the venue in which legal actions by debt collectors may be brought, the FDCPA makes no attempt to regulate the legal process. But while Congress left incidents of the judicial process other than venue to state regulation, it did not intend to shield from the FDCPA court "officials" who collect debts without resort

---

**2.** Another reasonable interpretation of exemption (C) is that it applies to employees of the United States or a State whose official duties include the collection of debts in the interest of the government which employs them. There is some language in House Report No. 95–131 indicating that this may have been intended,

H.R.Report No. 95–131, 95th Cong., 1st Sess. 11, and if so, exemption (C) would be consistent with exemptions (A) and (B), exempting collection by employees of the creditor. The Senate Report, however, does not support this interpretation.

to judicial process, any more than it intended to shield from the FDCPA attorneys who run collection agencies.

Green also urges that he falls within exemption (D) because the form demand letter he uses is "legal process." Neither the district court nor the majority accept that argument. It is plainly without merit. The demand letter may have legal significance if Green's collection efforts are unsuccessful, and the landlord decides to proceed with an eviction, because a landlord seeking a writ of possession must have sent a notice to quit. Pa.Stat.Ann. tit. 68, § 250.501 (Purdon 1965). But whether that notice is sent by the landlord or by his agent, it is not process. Moreover, although in a form prescribed by the Municipal Court, the letter has no legal significance whatever in those cases in which Green succeeds in collecting the rent. Nothing in Pennsylvania law authorizes Landlord and Tenant Officers, or constables outside Philadelphia County, to collect rent for a landlord before a suit has been filed. In sending a demand letter and in collecting rent, the Landlord and Tenant Officer derives his authority solely from his principal, the landlord. *Cf.* Pa.Stat.Ann. tit. 68, § 250.504 (Purdon 1965) (authorizing constables to receive rental arrearages after judgment but prior to execution of a writ of possession).

The plaintiffs also urge that in devising a set of forms which permit the Landlord and Tenant Officers to identify themselves with the Municipal Court of Philadelphia, the Presiding Judge of that Court acted inconsistently with the Pennsylvania law which abolished the office of constable in Philadelphia. They point out that in 1964 and 1965 the Pennsylvania Attorney General's Office conducted a major investigation of the Philadelphia magistrate system. Part of that inquiry focused on abuses by constables acting as private debt collectors. The Attorney General's Report notes that many constables operated as collection agents without registering as such and that many of them advertised their connection with the magistrate court in soliciting landlord-tenant collection business. *Report of the At-*

*torney General on the Investigation of the Magisterial System* 27, 362 (1965). The Report noted that

> constables are engaging in practices designed to terrify the average citizen and to make it clear that by reason of the constable's close association with the magistrate who will hear the case, any attempt to resist collection is futile. This is a fact of life in the magistrate's civil court even though the debtor has a valid defense. These practices include vicious dunning letters, [and] harassing and abusive phone calls....

*Id.* at 27. The Report recommended legislation abolishing the constable system in Philadelphia and the transfer of constables' duties in civil actions to the sheriff's office. *Id.* at 44–45. In response the Pennsylvania legislature abolished the constable system in Philadelphia and transferred constable duties under the Landlord and Tenant Act of 1951 to Landlord and Tenant Officers. Pa.Stat.Ann. tit. 13, § 15 (Purdon Supp. 1981–82). Outside Philadelphia, where constables still function, they are prohibited by Court Rule from engaging in the collection business. Rule 10, Rules Governing Standards of Conduct of Constables, Pa.Stat. Ann. tit. 13, App. (Purdon Supp. 1981–82). Thus, plaintiffs note, the legislative reforms resulting from the 1965 Report of the Attorney General have been interpreted in Philadelphia so as to put the Landlord and Tenant Officers in Philadelphia in the same position as the constables were in prior to those reforms.

In light of the foregoing history, the majority's reliance on 42 Pa.Cons.Stat.Ann. § 2301 as authority for allowing the President Judge of the Municipal Court to cloak bill collectors with the mantle of an "official" status in their bill collecting, as distinguished from their process serving functions, is highly dubious. There is no need, however, to pass upon that question of state law. The history of the constable system in Philadelphia discloses the very evils against which the FDCPA and 16 C.F.R. § 237.3 were aimed. These federal laws were enacted because Congress found that state

law was not uniformly effective. Assuming the President Judge does have the authority he claims to cloak his Landlord and Tenant Officers with an "official" mantle when they engage in the business of private debt collection without resort to legal process, the situation in Philadelphia demonstrates how right Congress was about the inutility of relying on state law to prevent undesirable debt collection practices.[3] The unrealistic interpretation of the FDCPA announced by the majority unfortunately puts the states in the position of perpetuating one of the principal evils against which the legislation was directed.

I would reverse.

---

**3.** When the FDCPA was considered in the Senate the inadequacy of Pennsylvania's law was referred to specifically. 123 Cong.Rec. S 13854 (Aug. 5, 1977) (Remarks of Senator Riegel). So also was the evil of "impersonating public officials and attorneys, and simulating legal process." Excerpt of Senate Report 95–382 inserted in the record by Senator Byrd. *Id.* at S 13855.