SUTTON, Circuit Judge,
dissenting.
From the founding, the States have taken debts — whether owed by them or to them — seriously. Compare Chisholm v. Georgia, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), with U.S. Const. amend. XI. If States have the sovereign right to set the terms of being sued, see Alden v. Maine, 527 U.S. 706, 715-27, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), they assuredly have a sovereign right to determine how, when, and whether to collect the myriad debts owed to them. No State to our knowledge employs all of the individuals needed to perform this sovereign function. See Nat’l Ass’n of State Auditors, Comptrollers, and Treasurers, Government Debt Collection: Survey Report and Recommendations 1-2 (2010), available at http://goo.gl/k07GQ9. The States as a result hire other agents to collect the debts for them. In the State of Ohio, that means the Attorney General hires private lawyers — called “special counsel” — to collect debts on his behalf, to file and settle debt-collection lawsuits with his permission, and to serve at his pleasure. These lawyers become the Attorney General’s agents for debt-collection purposes, just as the employees in the Collections Enforcement Section of the Attorney General’s Office serve as his agents for these purposes, and together all of them are authorized to stand in his place when recovering the State’s money.
Plaintiffs filed this class action against the State’s special counsel under the Fair Debt Collection Practices Act, claiming that their debt collection letters were “false and misleading” because they used stationery with the Ohio Attorney General’s name’ on it. That claim has two serious flaws. One is that the Act exempts state “officers” from its coverage. Under the Dictionary Act and the dear-statement rule established by Gregory v. Ashcroft, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), the deputizing of private lawyers to act as assistant attorneys general makes them “officers” of the State for these collection purposes. Any other interpretation would mean that Congress meant to micromanage how a State structured its law-enforcement and debt-collection efforts and would create grave constitutional concerns along the way. The other flaw is that the special counsels’ use of the Ohio Attorney General’s stationery and the accurate description of their relationship with the State are not “false and misleading” under the statute. The stationery, which the Attorney General requires each special counsel to use, ac *1111 curately describes the relevant legal realities — that the law firm acts as an agent of the Attorney General and stands in the shoes of the Attorney General in collecting money owed to the State. Because I would not apply the Fair Debt Collection Practices Act to state sovereign functions that Congress has not regulated and would not prohibit conduct that Congress has not banned, I must respectfully dissent.
I.
The Fair Debt Collection Practices Act prohibits debt collectors from using “false, deceptive, or misleading representation^] or means in connection with the collection of any debt.” 15 U.S.C. § 1692e. Mindful of the sovereign authority of the Federal Government and the States to determine how, when, and through whom to collect government debts, the Act exempts “any officer of ... the United States or any State to the extent that” debt collection ranks among “his official duties.” 15 U.S.C. § 1692a(6)(C). The Dictionary Act defines “officer” as “any person authorized by law to perform the duties of the office.” 1 U.S.C. § 1. Outside counsel hired to handle governmental duties fit that definition to a tee.
Begin with the phrase “authorized by law.” To “authorize” is “[t]o give legal authority,” “to empower,” or “to sanction.” Black’s Law Dictionary (10th ed.2014). That is what Ohio’s special-counsel statute does. It empowers the Attorney General to “appoint special counsel to represent the state” in connection with its debts, and it permits any action those private lawyers take when they invoke their attorney-general-given authority. Ohio Rev.Code § 109.08. But for the statute, the Attorney General has no power to hire private lawyers as contractors, and private lawyers have no power to speak on his (and by extension the State’s) behalf. Section 109.08, to wrap up, is a “law” that “authorize[s]” special counsel to act.
Now consider the other key phrase: “the duties of the office.” An “office” is a “position whose occupant has legal authority to exercise a government’s sovereign power for a fixed period.” Black’s Law Dictionary (10th ed.2014). Special counsel fit this bill as well. They serve one-year renewable terms in a position created and empowered by statute. In their hands rests nothing less than a portion of the Attorney General’s sovereign power to “enforce” the civil code the Ohio legislature has crafted — “one of the quintessential functions of a State” — by in this instance collecting money due the State. Diamond v. Charles, 476 U.S. 54, 65, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986); see Associated Builders & Contractors v. Perry, 16 F.3d 688, 692 (6th Cir.1994). That may explain why, after Georgia lost Chisholm before the Supreme Court and was forced to come to federal court to defend debt-collection efforts against it, the Supreme Court proceeded to lose Chisholm before the People. See U.S. Const. amend. XI. These are quintessentially sovereign functions concerning the People’s money. Special counsel hired to perform core sovereign functions 'count as “officers” exempt from the Fair Debt Collection Practices Act’s sweep.
Even if one thinks that the Dictionary Act’s definition of “officer” is ambiguous in this context, the exemption still applies. When Congress purports to regulate core state functions, it must do so unambiguously. Gregory, 501 U.S. at 470, 111 S.Ct. 2395. The Gregory clear-statement admonition bars courts from construing ambiguous federal statutes to “trench on the States’ arrangements for conducting their own governments.” Nixon v. Mo. Mun. League, 541 U.S. 125, 140, 124 S.Ct. 1555, *1112 158 L.Ed.2d 291 (2004). “If Congress intend[s] to recalibrate state and federal power in an area that has traditionally been the province of state government,” it must be clear in doing so. Jackson v. Sedgwick Claims Mgmt. Servs., Inc., 731 F.3d 556, 567 (6th Cir.2013) (en banc).
Who can deny that plaintiffs’ interpretation of “officer” “treneh[es] on the States’ arrangements for conducting their own governments”? Nixon, 541 U.S. at 140, 124 S.Ct. 1555. The States’ sovereign authority gives them power to structure their legal departments as they please, and their “varied” and “pragmatic” approaches have produced a “staggeringly] divers[e]” array of governance arrangements. Avery v. Midland Cnty., 390 U.S. 474, 482-83, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). As is its ■ sovereign right, Ohio has empowered its Attorney General to deputize third parties to shoulder some of his duties. He may appoint special counsel to “represent the state in civil actions, criminal prosecutions, or other proceedings in which the state is a party,” Ohio Rev.Code § 109.07; to “act as attorney at law in any antitrust case” for the State and its residents, id. § 109.81; to “exercise all rights, privileges, and powers of prosecuting attorneys” in organized-crime cases, id. § 109.83; to “initiate and prosecute” violations of Ohio’s workers compensation laws, id. § 109.84 — and to “represent the state in connection with all claims of whatsoever nature which are certified to the attorney general for collection,” id. § 109.08.
Nor does Ohio stand alone in this regard. Every State has delegated at least some of its debt-collection power to a non-State body. Sometimes that is the federal government, which in fiscal year 2013 collected more than $3 billion in delinquent debts on behalf of all fifty States. U.S. Dep’t of the Treasury, Fiscal Year 2013 Annual Report to the States: Treasury Offset Program Delinquent Debt Collections 4 (2014), available at http://goo.gl/60 70ul; see 31 C.F.R. § 285.8. But other times that is a private entity. See, e.g., Idaho Code Ann. § 67-2358(1); Or.Rev. Stat. § 293.231; Wash. Rev.Code § 19.16.500. One State’s collections-assignment scheme bears more than a passing resemblance to Ohio’s. California’s Franchise Tax Board hires private contractors to collect debts on the State’s behalf and authorizes them to “refer” debts “for litigation by [their] legal representatives in the name of the Franchise Tax Board” itself. Cal. Rev. & Tax Code § 19376(b). Interpreting the Fair Debt Collection Practices Act to regulate special counsel’s activities undermines the State’s decision to allocate law enforcement responsibilities between the Attorney General and his agents however the State sees fit. Absent a clear congressional directive, federal courts have no license to interfere with that choice.
Plaintiffs, notably, concede that “[t]he term ‘officer’ is ambiguous” and “open to multiple[ ] yet reasonable interpretations.” Reply Br. at 5. That should be the end of this case. Their inability to argue that the statute is unambiguous in their favor means the Gregory clear-statement rule answers the question presented: “officers” includes special counsel authorized by the Attorney General to handle specific government functions, including the collection of the State’s debts.
Plaintiffs offer several contrary arguments, all unpersuasive. First, they raise a canon of their own: Remedial statutes must be construed liberally. See Cobb v. Contract Transp., Inc., 452 F.3d 543, 559 (6th Cir.2006). But we know that canon does not trump the Gregory clear-statement rule because Gregory itself involved a remedial statute, the Age Discrimination in Employment Act, and the Supreme *1113 Court insisted on a clear statement all the same.
Second, plaintiffs seek solace in two circuit court decisions holding that independent contractors cannot be officers: Pollice v. National Tax Funding, L.P., 225 F.3d.379 (3d Cir.2000), and Brannan v. United Student Aid Funds, Inc., 94 F.3d 1260 (9th Cir.1996). Neither case helps them. In Pollice, .a municipal government sold its debts to a debt collector, 225 F.3d at 389, eliminating the possibility that the collector was somehow an officer of the government in collecting the debt for the government. And in Brannan, the collector and not the government owned the debt in the first place. 94 F.3d at 1262. In this case, by contrast, the State of Ohio remains the ultimate creditor and thus its agents — special counsel — collect the debts on the State’s behalf.
Third, plaintiffs argue that Congress could not have intended the state-officer exception to include special counsel because the Fair Debt Collection Practices Act has a separate provision giving the State an out: It may ask the federal Consumer Financial Protection Bureau to exempt special counsel from the Act’s requirements. 15 U.S.C. § 1692o. That misunderstands how this relief valve functions. The Act permits the Bureau to exempt “any class of debt collection practices” subjected by state law to “substantially similar” consumer-protection requirements. Id. The relevant question is whether state law regulates a certain debt-collection practice as stringently as federal law, not whether the debt collectors carrying on that practice are “substantially similar” to entities the Act exempts. At any rate, the premise of this argument is false. Plaintiffs have not argued, nor have we found any indication, that the State’s consumer-protection law regulates the Attorney General’s use of his own letterhead.
Fourth, plaintiffs argue that Ohio does not treat special counsel as state officers under its own law for some purposes. But the question at hand is how the federal Fair Debt Collection Practices Act treats “officers,” not how state law treats the term for some purposes. The only relevant state law question is whether the state law duties of special counsel satisfy the federal definition of “officer.” They do. Even if state law definitions of “officer” ivere relevant, plaintiffs mischaracterize how Ohio uses the term for this purpose: debt collection. The state statute regulating collection agencies defines such agencies as persons “who, for compensation, ... offer[] services to collect an alleged debt asserted to be owed to another.” Ohio Rev.Code § 1319.12(A)(1). Just like its federal counterpart, it exempts “[a]ny public officer” from its terms, id. § 1319.12(A)(2)(e) — and Ohio courts define “officer” the same way the Dictionary Act does. “[T]he chief and most decisive characteristic of a public office,” the Ohio Supreme Court has held, “is determined by the quality of the duties with which the appointee is invested, and by the fact that such duties are conferred upon the appointee by law.” Engel v. Univ. of Toledo Coll. of Med., 130 Ohio St.3d 263, 957 N.E.2d 764, 768 (2011). Ohio courts applying that definition accord no significance to the fact that a particular appointee may also be an independent contractor whose statutorily prescribed duties are fleshed out by the terms of his contract. See Solowitch v. Bennett, 8 Ohio App.3d 115, 456 N.E.2d 562, 566 (1982). All of this explains why Ohio regards even the Deputy Registrar of the Bureau of Motor Vehicles, an independent contractor under the statute, as an “officer.” Id.
Finally, plaintiffs urge us to limit the Dictionary Act’s definition because every state contractor would otherwise qualify as
*1114 an “officer.” Any such slope is not as steep or as slick as they imagine. The Ohio Facilities Construction Commission, cited by the majority in support of plaintiffs’ view, proves the point: There is nothing “sovereign” about the power to “construct[] and repair” a state agency’s buildings, Ohio Rev.Code § 123.21, and sovereign power remains a precondition of officer status. In other respects, the Dictionary Act’s definition reads expansively because the definition is expansive. Congress knows how to supersede a Dictionary Act default and has done so before: Title 5 defines “officer” as someone (1) “required by law to be appointed in the civil service” by the President, certain agency heads, or a federal court; (2) “engaged in the performance of a Federal function”; and (3) “supervis[ed]” by a limited group of people. 5 U.S.C. § 2104. Other restrictive definitions exist. To qualify as a principal officer under the National Constitution, a person must be presidentially appointed and senatorially approved, swear an oath of office, and “exercis[e] significant authority pursuant to the laws of the United States.” See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 506 & n. 9, 130 S.Ct. 3138, 177 L.Ed.2d 706 (2010). Congress did not deviate from the Dictionary Act when drafting the Fair Debt Collection Practices Act. I would respect that choice and Gregory’s command that any ambiguity in the statute be construed in a way that does not interfere with how the State chooses to handle this core state function: debt collection.
II.
Even if the Fair Debt Collection Practices Act somehow covered debt-collection efforts by special counsel on behalf of the State, plaintiffs face another problem. The Act does not transform the special counsels’ use of the Ohio Attorney General’s stationery into “false,” “deceptive,” or “misleading” actions under the statute any more than it would do the same if a special counsel listed his or her name and firm under the Ohio Attorney General’s name and address in a brief filed in this Court.
Recall the distribution of authority the special-counsel statute creates. Special counsel are the Attorney General’s agents, authorized to stand in his place when collecting Ohio debts. As their contracts makes clear, they “provide legal services” on the Attorney General’s behalf. R. 48-8 at 2. They may file and settle lawsuits with the Attorney General’s permission. Id. at 5. The Collections Enforcement Section of the Office of the Attorney General assigns them specific debts to collect, then audits their performance. Id. at 3. The State does not sell the debts to special counsel, and they thus remain debts of the State. Id. at 6. As a consequence, special counsel are no different from assistant attorneys general paid to recover the State’s money. That is how the Attorney General treats them. Assistant attorneys general “frequently” help special counsel draft pleadings, and sometimes sign on as co-counsel when a “particularly sensitive or complex” case demands it. See R. 24 at 21. Assistant attorneys general even stand in for special counsel (and special counsel for assistant attorneys general) when illness strikes or .when distance makes travel impractical, even if the replacement has not been formally assigned to the debt. Id.; see Shapiro v. Ohio Attorney Gen., 132 Ohio App.3d 711, 725 N.E.2d 1232, 1235 (1999). It thus should come as no surprise that the Attorney General requires his debt-collection agents to use his official stationery. See R. 5 at 2. In this context, an agent who uses his principal’s letterhead speaks the truth; he does not say anything false or misleading.
*1115 Consider the plaintiffs’ theory of liability under 15 U.S.C. § 1692e(9). That provision prohibits the use of letters that “simulate! ]” or are “falsely represented” to be “documents] authorized, issued, or approved by” a State, or that “create!] a false impression as to [their] source, authorization, or approval.” Id. A document with the Attorney General’s letterhead, it is no doubt true, gives the impression that it comes from the Attorney General. But special counsel’s dunning letters do come from the Attorney General. And plaintiffs have not produced any evidence that these special counsel exceeded the scope of their debt-collection authority under state law or the Attorney General’s guidance.
Now consider plaintiffs’ theory of liability under 15 U.S.C. § 1692e(14). That provision prohibits debt collectors from using “any business, company, or organization name other than the true name of the debt collector’s business, company, or organization.” Plaintiffs argue that, by employing the Attorney General’s letterhead, special counsel “use” a “name other than the true name” of their law firms. Wrong again. Nothing about § 1692e(14) prohibits special counsel from affiliating themselves with the Office of the Ohio Attorney General. Although the statute never says what a “true name” is, its import is straightforward: A debt collector may not lie about his institutional affiliation. As the Federal Trade Commission, one of the federal agencies responsible for enforcing the Act, recognizes, a debt collector may use multiple names in his various affairs as-long as the names “do[ ] not misrepresent his identity or deceive the consumer.” Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50,097, 50,107 (Dec. 13, 1988). Here too the principal-agent relationship resolves the dispute. Special counsel may lawfully use the Attorney General’s letterhead because, as his agents, they represent him in debt-related affairs.
An analogy makes the point. Many insurance agents are independent contractors. See Weary v. Cochran, 377 F.3d 522, 526 (6th Cir.2004). Some insurance agents are themselves separately' incorporated.' But no one bats an eye when an insurance agent working for John Doe Insurance Agency, Inc. uses Nationwide Mutual Insurance Co. letterhead when selling Nationwide insurance products on Nationwide’s behalf. Just as there is nothing remotely untrue or misleading about using that letterhead, there is nothing remotely untrue or misleading about using this letterhead.
Plaintiffs offer several theories to resist this conclusion. Theory one: The letterhead misrepresents a special counsel’s authority because state law purportedly prohibits special counsel from using the Attorney General’s letterhead to collect these debts. But plaintiffs offer no case-law to that effect. And Ohio’s top legal official, the Attorney General, has said otherwise. He requires all special counsel performing debt collection on his behalf to use his letterhead, whether in the context of unpaid taxes or other state debts. See R. 5 at 2. Notably, plaintiffs do not argue that the Attorney General has violated state law. See R. 31 at 3 (affirmatively waiving the argument). In this setting, a private law firm cannot plausibly be tagged with liability under the Act for false or misleading acts when it complies with the directions of the State’s top legal official about a matter of state law. The only thing that could be false or misleading in this setting would be to send out dunning letters on the law firm’s stationery.
Theory two: The letterhead tricks debtors into believing they are being contacted by the Attorney General when they dre in *1116 fact being contacted by someone else. That does not make sense either. Special counsel are the Attorney General when it comes to debt collection, and as his agents' possess just as much authority to invoke his name as an assistant attorney general or another of his employees. It makes no difference that special counsel are deemed independent contractors by contract, thanks to a basic principle of agency law: A person need not be a principal’s employee to be that principal’s agent. “[Njothing about the title independent contractor invariably precludes someone from being an agent under appropriate circumstances.” United States v. Hudson, 491 F.3d 590, 595 (6th Cir.2007) (citing Restatement (Second) of Agency § 2 cmt. b (1958)). For that inquiry, it does not matter whether special counsel work in the Attorney General’s office building or their own office building, whether they use the Attorney General’s computers or their own computers, whether they are insured by the Attorney General or by their own policies. The only question that matters is whether they exercise the Attorney General’s debt-collection powers as his agents. They do.
Theory three: The letterhead confuses debtors into thinking that debts owed to the State of Ohio are more significant than a debt owed to a private entity such as a bank. Plaintiffs do not spell out the source of this alleged intimidation, but a few possibilities come to mind. One is the institutional affiliation printed on the letterhead: “Mike DeWine, Ohio Attorney General.” See Appendix. But that is the same institutional affiliation conveyed by the letters’ signature blocks. E.g., id. (“Outside Counsel for the Attorney General’s Office.”). Plaintiffs conceded at argument that the Act does not bar special counsel from referencing their job title in their signatures. The letterhead’s content thus cannot supply a cognizable basis for this claim.
Another possibility turns on the creditor itself: the State of Ohio. An official communication from the State could intimidate an unsophisticated consumer into thinking that the consequences of failing to pay this debt (as opposed to private debts) are more severe. But that fear is justified and anything but unsophisticated. From the perspective of a consumer, debts owed to Ohio (and other governments) do have consequences not shared by debts owed to private parties. For example, the State may deduct what it is due from a taxpayer’s refund, whether the refund comes from the Federal Government, the State, or a local government. See, e.g., Ohio Rev.Code § 5703.77(D) (credit account balances); id. § 5726.31 (financial institutions tax); id. § 5747.12 (income tax); 31 C.F.R. § 285.8 (federal tax). That is not true with respect to private debts. Debts owed to governments also take priority over most private debts in state probate proceedings. See Ohio Rev.Code § 2117.25(A). The special consequences of state debts explain why the Act bars debt collectors unaffiliated with a State from using the State’s name to scare debtors into paying. When the State itself is doing the demanding, however, nothing about the resulting fear misleads. And when special counsel communicate with debtors, they stand in the State’s shoes, just as the Attorney General would stand in the State’s shoes if he pursued delinquent debtors himself. The only thing misleading in this setting would be to suggest (through a law firm letterhead alone) that this was not a state debt.
The last possibility is that the use of the Attorney General’s letterhead evokes un justified fears: fear of the Attorney General “stop[pingj or delaying]” a pending bankruptcy, R. 48-2 at 1, or fear of being charged with a crime, R. 48-3 at 2. But neither of the milquetoast letters in the *1117 record threatens criminal prosecution, civil penalties, or any action whatsoever. See Appendix. The letter to Pamela Gillie simply invites her to “make arrangements to pay” if she cannot satisfy her obligation in full, while the letter to Hazel Meadows simply discloses her current balance owed. Id. Not even the least sophisticated consumer could infer anything from these letters other than the reality that these were indeed state debts.
Theory four: The letterhead misleads debtors, into thinking that special counsel are not associated with the State when in fact they are. True, the Office of the Attorney General has received calls from debtors worried that a special-counsel dunning letter is a scam. But that implies the letters do not say enough about how tightly knit the Attorney General and special counsel are — an implication that contradicts plaintiffs’ entire theory of liability.
All of this may explain why the only circuit to confront an analogous governmental debt-collection practice has rejected plaintiffs’ argument. See Heredia v. Green, 667 F.2d 392 (3d Cir.1981). In Heredia, the Philadelphia Municipal Court appointed defendant Edward Green as a “landlord and tenant officer,” as state law authorized it to do, and ordered him to deliver delinquency notices on the Court’s behalf. Id. at 393, 395. Recognizing Green as an “officer,” the Third Circuit turned aside plaintiffs’ claims under the Fair Debt Collection Practices Act’s officer exemption. To hold otherwise would place Green “in the anomalous position of being exposed to personal monetary liability for deceptively giving the impression that he was acting as an officer of the court despite the fact that his actions ... had indeed been authorized by that court.” Id. at 396 (Stern, J., concurring). As for Peter v. GC Servs., L.P., 310 F.3d 344 (5th Cir.2002), the Fifth Circuit never considered the relationship between the government and the defendants and thus never considered the agency question presented here.
The majority seeing things differently, I respectfully dissent.

Appendix

*1118 [[Image here]]
*1119 [[Image here]]