Vera E. GARY, Perry Smith, Karen R. Davis, and Sharon E. Hamby, Individually and as representatives of all others similarly situated, Plaintiffs,

v.

J. Fred SPIRES, Individually and in his official capacity as Administrator of the Check Clearing House for Lexington County, American Fire & Casualty Insurance of Orlando, Florida, Piggly Wiggly Corporation, Inc., Bi-Lo, Inc. and Fogles Food City, Defendants.

Civ. A. No. 78–1650.

United States District Court,
D. South Carolina,
Columbia Division.

March 14, 1979.

Jean L. Perrin, Columbia, S. C., and John Earl Duncan, Lexington, S. C., for plaintiffs.

William F. Able, Columbia, S. C., for J. Fred Spires.

Wilburn Brewer, Jr., Columbia, S. C., Archie L. Harmon, Lexington, S. C., for The County of Lexington.

William F. Able, Columbia, S. C., for American Fire & Cas. Ins. of Orlando.

James E. Barfield and W. Lisa B. Rakowsky, Lexington, S. C., for Piggly Wiggly Corp., Inc.

Ernest J. Nauful, Jr., Columbia, S. C., for Bi-Lo, Inc.

James W. Alford, Columbia, S. C., for Fogles Food City.

HEMPHILL, District Judge.

Plaintiffs, who, under common South Carolina parlance would be called "bad check" writers, and who so admit in their complaint, seek to pursue an alleged claim against the various defendants named, seeking a preliminary and permanent injunction, actual and punitive damages, restitution, attorneys fees and costs. The complaint, designated on its face as a "class action" complaint, as filed September 19, 1978, after attempting to set up the fact that the class action is proper, claims jurisdiction, initially, as a class action, under Title 28, U.S.C. § 1343 [1] and Title 15 U.S.C. § 1691 and the doctrine of pendant or ancillary jurisdiction. Paragraph 9 of the complaint alleges:

9. That the Defendants, Piggly Wiggly Corporation, Inc., Bi-Lo, Inc., and Fogles Food City, sometimes called "Merchants", are corporations doing business in this state and engaged in the pattern and practice of conduct of forwarding for collection to the said Defendant Spires all checks drawn by the Plaintiffs [2] which had been returned to such corporations marked "insufficient funds"; that there are numerous other unnamed businesses and corporations who pursued a similar pattern and course of conduct; that the identity of such unknown businesses and corporations is at present unknown to Plaintiffs, as will more fully appear in subsequent allegations herein; that the Plaintiffs at this time pray the Court's indulgence, and respectfully submit to the Court that, when discovery is had in this matter, they intend to move this Court for leave to amend this Complaint, and add as Defendants these presently unknown businesses and corporations.

Paragraph 10 of the complaint recites the fact that a Check Clearing House of Lexington County was established by the General Assembly of the State of South Carolina in 1973, which purported to establish a uniform system within Lexington County for the initiation and prosecution of fraudulent check charges and purported to confer upon defendant J. Fred Spires, as Administrator, concurrent jurisdiction with all of the Magistrates of said county in fraudulent check cases only, and does not confer any civil jurisdiction upon him as Administrator, nor allow him to charge fees or costs for issuance of civil process. The complaint does not state that the Act is unconstitutional, but strongly hints at its unconstitutionality. It is claimed that the defendants, through J. Fred Spires, Administrator, used the Check Clearing House as an instrument or vehicle to force payment of the bad checks of the various bad check artists who would be included in the class, past, present and future. Such actions are claimed to be violations of the constitutional rights of plaintiffs, and also constitute abuse of process and unfair debt collection practices. Their first claim asks for an injunction.

A second claim in the complaint does not recite 42 U.S.C. § 1983, but states, among other things, "that at all times hereinafter alleged, defendants were acting under color of State law and employed agents to effect the conduct herein complained of and that

---

1. 28 U.S.C. § 1343 provides: Civil rights and elective franchise.

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
. . ..

2. It must be assumed that all of the class would be composed of people who had been "bad check" writers and passed those checks at Piggly Wiggly; Bi-Lo, Inc.; and Fogles Food City, defendants.

defendants conspired together and acted to deprive the plaintiffs of their rights of equal protection and due process under the Constitution." A third claim states that the bad checks written by plaintiffs which were returned to the various merchant defendants marked "insufficient funds" were debts within the meaning of the Fair Debt Selection Practices Act, 15 U.S.C. § 1692[3] and that defendant Spires was and is a "debt collector" in the terms of said Act, and that defendant merchants were "creditors" within the meaning of the Act. The complaint sets up the alleged activities of Spires in violation of the Fair Debt Collection Act. A fourth claim sets up a conspiracy by defendants to coerce, threaten and intimidate plaintiffs into paying off the bad checks. The fifth claim complains about the costs, the same being a $10.00 fee, in each case, etc.

For the purposes of this decision, this court accepts, as it must, the facts as alleged in the complaint, or as supplemented by plaintiffs' counsel upon interrogation by the court. Joining in the motion by way of answer, was Lexington County, when its first defense in the answer set up a defense that the complaint failed to state facts sufficient and the third defense that the court lacked jurisdiction of the subject matter and person of that defendant. It appears that the fortunes of American Fire & Casualty Insurance Co., insofar as this decision is concerned, depend on the success or failure of the motion as to Spires. At the hearing plaintiff abandoned all claims under 15 U.S.C. § 1691, as inapplicable here.

█ This suit cannot be maintained under the Fair Debt Collection Practices Act because the defendant Spires is not included as a debt collector under the definitions of the Act and is excluded because he is admittedly an officer or employee of the State of South Carolina. 15 U.S.C. § 1692a(6).

Paragraph 6 of the complaint identifies defendant Spires as the duly appointed and acting Administrator of the Check Clearing House for Lexington County, obviously an officer or employee of the subdivision of the State of South Carolina. Paragraph 10 of the complaint recognizes that Spires is clothed with judicial authority as Magistrate and Paragraphs 12, 13 and 14 allege that he was acting in his official capacity.[4]

In 1977 the U.S.Code Congressional and Administrative News, at page 1698, clearly states that Congress did not intend to include government officials as "debt collectors." In explaining the definitions, at page 1701, it was stated:

§ 803. Definitions.—The term "debt collector" is defined to include all third parties who regularly collect consumer debts for others, except for the following

.    .    .    .    .

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts; .   .  ..

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties; .   ..

---

3. 15 U.S.C. § 1692a(6)(B) and (C) provide: Congressional findings and declaration of purpose.

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly, or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (G) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

4. At the hearing on these motions, held February 7, 1979, plaintiff's counsel, with commendable candor, admitted that all of the activities of the defendant Spires originated in and were from the Magistrate's Office in the City of Lexington where Spires hold forth as Magistrate and as Administrator.

persons . . .. Government officials collecting in their official capacities; process servers . . ..

It is obvious that the court does not have jurisdiction of the subject matter of this defendant pursuant to 15 U.S.C. § 1692, *et seq.*

We cannot escape the conclusion that the action is an action under 42 U.S.C. § 1983[5] if this case against Spires is for activities which he did in his official capacity either as Magistrate or as Administrator of the Check Clearing House. Since he was acting as Magistrate at all times, he has immunity, the immunity of the judiciary. Within the year, on March 28, 1978, the United States Supreme Court published its opinion in *Stump v. Linder Kay Sparkman and Leo Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331, wherein a Judge of the Circuit Court of Indiana, approved a mother's petition to have her somewhat retarded, minor daughter, sterilized, and years later, after the daughter had married and discovered the fact she had been sterilized, she and her husband brought suit against the State Court Judge and others in the federal trial court, under the aborted vehicle known as 42 U.S.C. § 1983, seeking damages for the alleged violation of the daughter's constitutional rights, etc. The district court dismissed on the ground that the judge was immune from suit. The Court of Appeals reversed holding that the State Court Judge was not immune because he had not acted within his jurisdiction. On certiorari the United States Supreme Court reversed and remanded, stating among other things:

> The governing principle of law is well established and is not questioned by the parties. As early as 1872, the Court recognized that it was "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of

personal consequences to himself." *Bradley v. Fisher,* supra, [13 Wall.] at 347 [, 20 L.Ed. 646]. For that reason the Court held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." 13 Wall, at 351 [, 20 L.Ed. 646. Pp. 338, 339].

 \*  \*  \*  \*  \*  \*

A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction." 13 Wall, at 351 [, 20 L.Ed. 646.]

 \*  \*  \*  \*  \*  \*

A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors. The Court made this point clear in *Bradley,* 13 Wall, at 357, [20 L.Ed. 646,] where it stated that "this erroneous manner in which [the court's] jurisdiction was exercised, however it may have affected the validity of the act, did not make the act any less a judicial act; nor did it render the defendant liable to answer in damages for it at the suit of the plaintiff, as though the court had proceeded without having any jurisdiction whatever. . . [P. 341.]

 \*  \*  \*  \*  \*  \*

The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, i. e., whether it is a function normally performed by a judge, and to the expectations of the parties, i. e., whether they dealt with the judge in his judicial capacity. [P. 342.]

In applying the *Stump v. Sparkman* standard for judicial immunity to the facts of

---

5. 42 U.S.C. § 1983 provides: Civil action for deprivation of rights

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

this case, it is clear that Spires did not act in the "clear absence of *all* jurisdiction." As the case of *State ex rel. McLeod v. Crowe,* 249 S.E.2d 772, (S.C.1978), clearly points out, the magistrates have countywide jurisdiction in both civil and criminal cases. Thus, the plaintiffs' assertions as to lack of jurisdiction must fail.

In *State ex rel. McLeod v. Crowe,* the South Carolina Supreme Court construed Article V, § 1 [6] and Article V, § 23 [7] of the South Carolina Constitution as prohibiting jurisdictional differences between magistrates of different counties, and preventing unequal territorial jurisdictions of magistrates within the same county. Said the court:

> Sections 1 and 23 of Article V require that the jurisdiction of magistrates be uniform throughout the State. Such uniformity can only be accomplished through legislation which grants all magistrates *uniform countywide jurisdiction.* [Emphasis added).

249 S.E.2d at 776. Also relevant is the opinion of the Attorney General [8] that, "All magistrates, therefore, now constitutionally possess countywide territorial jurisdiction in both criminal and civil cases. *Cf.* Code of Laws of South Carolina, §§ 22–3–10, as amended, and 22–3–520 (1976)."

■ Where the magistrates have a constitutionally mandated countywide jurisdiction over civil and criminal cases, they must have had such jurisdiction before the Supreme Court spoke on the issue. Neither contrary statutes, nor the lack of a Supreme Court opinion, can alter the existence of their jurisdiction. The general rule as to the statute is that an unconstitutional statute provides no basis for the assertion of rights, but is to be treated as if it never existed. *Hannigan v. Chicago Motor Coach Co.,* 348 Ill.App. 473, 109 N.E.2d 381; *City of Atlanta v. Gower,* 216 Ga. 368, 116 S.E.2d 738. Plaintiffs cannot rely on invalid statutes, such as the Check Clearing House legislation nor statutes seeking to limit civil jurisdiction to districts.[9]

■ Plaintiffs further contend that certain conduct was clearly outside the magistrate's jurisdiction, i. e., the collection of money in fraudulent check cases. It is true that a judicial officer should not be a party to the use of criminal process to collect debts which should be the subject of a civil matter. However, the depositions and oral arguments indicate that Spires was merely allowing criminal defendants to avoid prosecution through repayment of the amount due. This procedure was initiated at the bad check writer's request, and prosecution was dropped only with the merchants' consent. That the Administrator merely acted as a receiver, is not sufficient to deprive him of judicial immunity. Any acts done pursuant to valid subject matter jurisdiction over the case, are protected, even though the acts might be procedurally improper.[10] As admitted by plaintiffs, all acts complained of were done in the capacity of Clearing House Administrator; where fees were collected an official receipt was given; and the parties perceived the Administrator to be acting in a judicial capacity. This evidence of judicial conduct, in the exercise of countywide jurisdiction, clearly

---

6. Article V, § 1, reads: "The judicial power shall be vested in a unified judicial system, which shall include a Supreme Court, a Circuit Court, and such other courts of uniform jurisdiction as may be provided for by general law."

7. Article V, § 23 reads: "The Governor, by and with the advice and consent of the Senate, shall appoint a number of magistrates for each county as provided by law. The General Assembly shall provide for their terms of office and their civil and criminal jurisdiction. The terms of office need not be uniform throughout the State but shall be uniform within each county."

8. Letter from Attorney General McLeod to L. E. Atwater, III, Director of the South Carolina Court Administration, dated November 16, 1978.

9. E. g. 43–881, *Code of Laws of South Carolina,* 1962.

10. In *Stump v. Sparkman,* the defendant judge was alleged to have failed to comply with elementary principles of procedural due process. In dismissing the claim, the Supreme Court held: "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." 98 S.Ct. at 1106.

meets the *Stump v. Sparkman* standard for judicial immunity. Thus, the motion to dismiss the § 1983 action must be granted as to Spires.

██ Once the question of judicial immunity is decided, the outcome of the other cases falls neatly into place. To hold the merchants liable under § 1983, the plaintiffs have tried to show a conspiracy with a state official to deprive the plaintiffs of constitutionally protected rights. Such conspiracy or joint activity causes the private person's acts to be considered as having been taken under color of state law. But where the alleged co-conspirator is immune from suit, the issue before the court is whether a private citizen is subject to suit who in no other way acted under color of state law. With apologies for citing an opinion of this court, the case of *Dennis v. Hein*, 413 F.Supp. 1137 (D.C.S.C.1976), is dispositive of this point. In that case this court stated:

A number of courts have considered this issue and, without exception, have concluded that the immunity of the alleged co-conspirator is fatal to the cause of action under § 1983 absent other indications that defendant acted under color of state law. . . . This court is in agreement with the decisions noted above and holds that a complaint such as this one, founded upon allegations of a conspiracy between a private individual and one who enjoys judicial immunity from such suits, fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983. . . . To allow the courts to entertain actions based on such allegations as this of conspiracy between private citizens and judicial officers would subject every complainant in every case to potential liability and an alarming possibility of suit under the ever-broadening provisions of § 1983. There is nothing in § 1983 or in any previous decision interpreting the statute which could require or justify a decision so likely to discourage private individuals from fulfilling any desire or, indeed, any moral obligation they may feel to become involved in the judicial treatment of crime and misconduct which has come to their attention.

413 F.Supp. at 1141. *Hansen v. Ahlgrimm*, 520 F.2d 768 (7th Cir. 1975); *Sykes v. California Dept. of Motor Vehicles*, 497 F.2d 197 (9th Cir. 1974); *Hill v. McClellan*, 490 F.2d 859 (5th Cir. 1974); *Guedry v. Ford*, 431 F.2d 660 (5th Cir. 1970); *Haldane v. Chagnon*, 345 F.2d 601 (9th Cir. 1965); *Stambler v. Dillon*, 302 F.Supp. 1250 (S.D.N.Y.1969); *Jemzura v. Belden*, 281 F.Supp. 200 (N.D.N.Y.1968); *Shakespeare v. Wilson*, 40 F.R.D. 500 (S.D.Cal.1966); see also *Grow v. Fisher*, 523 F.2d 875 (7th Cir. 1975).

For the reasons stated above, the complaint is dismissed as to all defendants pursuant to Rule 12, for failure to state a claim for which relief can be granted.

The motion(s) to dismiss is granted and the Clerk will enter judgment of dismissal of the entire cause.

AND IT IS SO ORDERED.