106 F.3d 400
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Vaughn BROADNAX, Plaintiff-Appellant,
v.
GREENE CREDIT SERVICE and James Grout, Defendants-Appellees.
 No. 95-3829.
 United States Court of Appeals, Sixth Circuit.
 Jan. 15, 1997.
 
 On Appeal from the United States District Court, for the Southern District of Ohio, No. 94-00321; Michael R. Merz, United States Magistrate Judge.
 S.D. Ohio
 REVERSED.
 Before: MARTIN, Chief Circuit Judge, and KRUPANSKY and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiff-appellant, Vaughn Broadnax ("Broadnax"), has contested the lower court's dismissal of his August 2, 1994 complaint for damages against a collection agency, defendant-appellee Greene Credit Service, and its owner, defendant-appellee James Grout ("Grout"). The complaint contained one count anchored in the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("the FDCPA") which alleged wrongful debt collection activities by the defendants, plus five additional pendent state law claims. On July 31, 1995, a magistrate judge, presiding by stipulation, ruled as a threshold issue that the subject debt which the defendants had attempted to collect from the plaintiff constituted a commercial obligation (rather than a consumer debt) which escaped the reach of the FDCPA. Accordingly, the magistrate dismissed the first count of the complaint with prejudice for failure to state a claim upon which relief can be granted (F.R.C.P. 12(b)(6)), and rejected the remaining five counts without prejudice for want of federal subject matter jurisdiction (F.R.C.P. 12(b)(1)). The dismissal of a count for failure to state a claim upon which relief can be granted, or for lack of federal subject matter jurisdiction, is an issue of law subject to de novo review. See, e.g., Forest v. United States Postal Service, 97 F.3d 137, 139 (6th Cir.1996); Dugan v. Brooks, 818 F.2d 513, 516 (6th Cir.1987).
 
 
 2
 The operative material facts are not in substantial dispute. Broadnax managed several rental residential properties owned by members of his family or by the estate of his deceased mother. Occasionally, Broadnax had retained Don Humphreys ("Humphreys") to perform necessary repairs to various units. On or about May 13, 1993, Broadnax hired Humphreys to effect repairs to two of the structures in exchange for payment of $165, conditioned upon prompt completion of all work. Broadnax at that time tendered to Humphreys a check for $165 drawn against his personal account at Society Bank. The appellant post dated this check to May 17 or May 19, 1993.
 
 
 3
 On May 15, 1993, Humphreys negotiated the check at a retail grocery store, Don's Super Valu located in Xenia, Ohio. Someone had altered the date of the draft to read "May 15." The owner of Don's Super Value, Don Craycraft ("Craycraft"), attested at deposition that the negotiation of checks for customers constitutes a part of the grocery's ordinary retail operations.
 
 
 4
 On May 16, 1993, while conducting business in New Jersey, Broadnax learned during a telephonic conversation with a tenant that Humphreys had not performed any of the contracted work. In response, Broadnax, using an Automatic Teller Machine, withdrew all cash except some amount less than $165 from his checking account to render the check non-negotiable for insufficient funds. Broadnax was unaware that Humphreys had already illegitimately endorsed the instrument to Don's Super Valu in exchange for value.
 
 
 5
 Subsequent to the return of the check to the grocery store as uncollectible, Broadnax received a telephone call from a person representing Don's Super Valu. Broadnax explained the history of the subject check and asserted that he did not owe the supermarket or anyone else any money on account of this instrument. Subsequently, Don's Super Valu retained the defendants to collect the debt. Craycraft testified that in his view Humphreys, not Broadnax, owned him the money. However, the collection agency elected to pursue Broadnax. Following several unsuccessful collection attempts via letter and telephone to Broadnax, defendant Grout on October 1, 1993 initiated a criminal complaint against Broadnax under O.R.C. § 2913.11(A) for allegedly passing a bad check. Grout swore in the complaint the following:
 
 
 6
 ... Vaughn M. Broadnax at Greene County, Ohio, on or about May 14, 1993, DID, with purpose to defraud issued [sic] a check in the amount of $165 (plus bad check fee of $20.00) to Don's Super Valu for payment of money being drawn upon Society National Bank knowing it would be dishonored. Check No. 388.
 
 
 7
 J.A. at 17.
 
 
 8
 This declaration was false, because Broadnax had issued the subject check to Humphreys, not to Don's Super Valu. Nonetheless, the appellant was arraigned in state court on this charge on October 14, 1993. At that time, the judge dismissed the case against Broadnax without prejudice and indicated on the record his belief that the collection agents should be seeking recovery from Humphreys, not Broadnax. J.A. at 41. The plaintiff's civil complaint for damages followed, which alleged, inter alia, that the criminal complaint against him, as well as other debt collection activities undertaken by the defendants, violated the FDCPA and Ohio law.
 
 
 9
 Upon considering the defendants' motion for dismissal of the subject complaint, the magistrate judge determined as a threshold issue that, as a matter of law on the undisputed facts presented, the debt which prompted defendants Grout and Greene Credit Service to take the collection actions supporting the plaintiff's complaint was a commercial debt, because Broadnax had executed the check to Humphreys in satisfaction of a commercial contract for repairs to rental properties. Under the FDCPA, certain abusive collection practices are actionable,[1] but only where the underlying debt is a consumer debt. 15 U.S.C. §§ 1692(a), 1692a(3) & (5). In the magistrate's view, the negotiation of the draft by Humphreys to Don's Super Valu in a consumer transaction did not alter the commercial nature of Broadnax's obligation created by the issuance of his check, because Broadnax himself had not negotiated the check to the retail food outlet. This appellate forum reviews this legal conclusion, as all legal questions, de novo. See, e.g., Dugan, 818 F.2d at 516.
 
 
 10
 The FDCPA defines the crucial terms "consumer" and "debt" as follows:
 
 
 11
 The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.
 
 15 U.S.C. § 1692a(3) (emphasis added)
 
 12
 The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.
 
 
 13
 15 U.S.C. § 1692a(5) (emphasis added).
 
 
 14
 In the instant case, the defendants had alleged that Broadnax owed Don's Super Valu a consumer debt by inaccurately alleging that Broadnax had negotiated the check to the grocery store. See Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir.1982). Additionally, by attempting to collect a debt evidenced by a personal check which had been cashed by an individual at a supermarket, the defendants sought to satisfy a purported consumer obligation. No record evidence indicated that Craycraft or the defendants were aware of the nature of the transaction between Broadnax and Humphreys which triggered execution of the check by Broadnax. Moreover, even if Craycraft or the defendants had possessed knowledge of the character of the underlying transaction between Broadnax and Humphreys, the defendants nevertheless had not been retained to collect any debt created thereby, and the grocery store in fact had no interest in the genesis of such an obligation. Rather, the defendants endeavored only to secure reimbursement of funds disbursed by Don's Super Valu, plus recovery of an additional "bad check" fee, associated with the endorsement of the instant check to the grocery store in a consumer transaction.
 
 
 15
 The undisputed facts evidence the creation of a consumer debt running from Humphreys to Don's Super Value in the amount of $165, which Humphreys attempted to discharge by assignment of Broadnax's check to the supermarket. The defendants attempted to collect that consumer debt from Broadnax.[2] The appellant had averred in his complaint at issue that the methods implemented by the appellees in their effort to secure payment from Broadnax, including the initiation of the criminal complaint, violated the FDCPA. These alleged activities comprised the type of abusive collection tactics in the consumer debt context which Congress intended to proscribe by enactment of the FDCPA:
 
 
 16
 There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.
 
 
 17
 15 U.S.C. § 1692(a).
 
 
 18
 It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.
 
 
 19
 15 U.S.C. § 1692(e).
 
 
 20
 Congress, therefore, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope. See S.Rep. No. 382, 95th Cong., 1st Sess. 4 (1977) ("In addition to [the] specific prohibitions, this bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed"), reprinted in 1977 U.S.C.C.A.N. 1695, 1698; see also Wright v. Finance Service of Norwalk, Inc., 22 F.3d 647, 650 (6th Cir.1994) (en banc ) (Congress wrote broad language into the FDCPA to forestall abusive practices by consumer debt collectors). In the instant case the defendants' undisputed debt collection conduct at issue could be found by a trier of fact to have been dishonest, abusive, unjustifiably harassing, and/or potentially defamatory.[3] For a consumer debt collector to intentionally and falsely accuse the collection target of fraudulently negotiating a bad check in a consumer transaction at a grocery store, and to initiate a criminal complaint against that person substantiated by such false accusation, in an attempt to exert pressure upon the target, would, if proved, unquestionably constitute a species of behavior by a consumer debt collection agent which Congress intended to deter, and expose to punishment, by enactment of the FDCPA.
 
 
 21
 Accordingly, the alleged debt collection activity which anchored the plaintiff's complaint at issue was subject to the FDCPA, as the defendants had attempted to collect a consumer obligation through the use of an arguably abusive, deceptive, and unfair debt collection practice (or practices). The magistrate judge erred as a matter of law by characterizing the debt which the defendants had sought to satisfy as a commercial debt not embraced by the FDCPA as a threshold matter, and consequently erred as a matter of law by dismissing the plaintiff's complaint for failure to state a claim under the FDCPA and for lack of federal subject matter jurisdiction. Consequently, the judgment below is hereby REVERSED and the case REMANDED to the district court for reinstatement of the complaint and for further proceedings consistent with this opinion.
 
 
 
 [1]
 Consumer debt collection practices targeted by the FDCPA generally include, inter alia, harassment or abuse (section 1692d), false or misleading representations (section 1692e), and unfair or unconscionable means used to collect a debt (section 1692f). Any violation of the FDCPA exposes a debt collector to potential civil damages liability. 15 U.S.C. § 1692k. See generally Heintz v. Jenkins, 115 S.Ct. 1489, 1490 (1995)
 
 
 [2]
 This court does not address the question whether the supermarket possessed a valid claim against Broadnax as the maker of the check on the facts of this case, as the resolution of that issue is not essential to the characterization of the debt running, or allegedly running, to the supermarket as either consumer or commercial in nature
 
 
 [3]
 However, under the FDCPA, the defendants may avoid liability if they can prove at trial that their wrongful conduct resulted from error, and can further satisfy affiliated statutory criteria:
 A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.
 15 U.S.C. § 1692k(c).