**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 11 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ALAN SNOW,

      Plaintiff-Appellant,

v.

JESSE L. RIDDLE, P.C.,

      Defendant-Appellee,

FEDERAL TRADE COMMISSION,

      Amicus Curiae.

No. 97-4045

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 96-CV-776-G)**

Stephen G. Bennett, Midvale, Utah, for the appellant.

Paul C. Droz (Dori Petersen with him on the brief), Blackburn & Stoll, Salt Lake City, Utah, and Jesse L. Riddle, Sandy, Utah, for the appellee.

Stephen Calkins, General Counsel, Jay C. Shaffer, Deputy General Counsel, Ernest J. Isenstadt, Assistant General Counsel, Federal Trade Commission, Washington, D.C., on the brief for the amicus curiae.

Before **BRISCOE**, Circuit Judge, **LUCERO,** Circuit Judge, and **McWILLIAMS**, Senior Circuit Judge.

**McWILLIAMS, Senior Circuit Judge.**

<u>Background</u>

On September 23, 1994, Alan Snow purchased consumer goods from a Circle-K Store and paid for the merchandise with his personal check in the amount of $23.12. Circle-K deposited the check with its bank, but the check was dishonored because of insufficient funds. Circle-K then forwarded the returned check to its attorney, Jesse L. Riddle, P.C., to pursue collection.

On May 10, 1996, Riddle sent the following letter to Snow:

JESSE L. RIDDLE, P.C.
*Attorney & Counselor at Law*
P.O. Box 1187
Sandy, Utah 84091
801-553-9191

May 10, 1996

Mr. Alan Snow
2990 South Blair Street
Salt Lake City, UT 84115

Dear Mr. Snow:

The check written by you to Circle-K on or about September 23, 1994 for $23.12 was dishonored. Pursuant to UCA §7-15-1, the check amount, along with a service fee of $15, must be paid within seven (7) days of this notice. If it is not paid, that statute provides for suit to be filed and for the court to award attorney fees, collection costs and other costs associated with

the suit.

In addition, the criminal code provides in UCA §76 6 505 that any person who issues a bad check knowing that it will not be honored is guilty of a crime. That statute also presumes criminal intent if the check is not paid within fourteen (14) days of actual notice.

My client did not offer or extend credit to you. More than fourteen days has elapsed since you received actual notice, thus making UCA §76-6-505 applicable.

Please pay the amount prescribed by statute.

Sincerely,

/s/ Jesse L. Riddle

Jesse L. Riddle, P.C.

In response to Riddle's letter of May 10, 1996, Snow paid the face amount of the check, i.e., $23.12, but refused to pay the $15.00 service charge. Instead, Snow brought the present action against Riddle.

Proceedings in the District Court

On May 19, 1996[1], Alan Snow filed a complaint in the United States District Court for the District of Utah against Jesse L. Riddle, P.C. based on that part of the Consumer Credit Protection Act (15 U.S.C. § 1601 *et seq.*) known as the Fair Debt Collections

---

[1]The copy of the complaint in Snow's appendix indicates that it was signed by his counsel on May 19, 199<u>7</u>. From the chronology of other pleadings in the case, we assume, although we do not know for certain, this was in error and that the complaint was actually signed, and presumedly filed, on May 19, 199<u>6</u>.

Practices Act ("Act"), 15 U.S.C. § 1692 *et seq.* Riddle responded thereto by filing a motion to dismiss under Fed. R. Civ. P. 12(b)(6). After hearing, the district court granted Riddle's motion to dismiss and dismissed Snow's action. Snow appeals. We reverse.

More specifically, in his complaint Snow alleged that his action was based on that part of the Act "which prohibits debt collectors from engaging in abusive, deceptive and unfair practices." Continuing, Snow alleged that Riddle, an attorney who engaged in debt collection, sent him a letter on May 10, 1996 demanding payment of a dishonored check which Snow had given Circle-K Stores. According to the complaint, Riddle's letter violated the Act because it did not include a so-called "validation notice" alerting him to his legal rights under the Act. (Snow, in his brief, cites in this regard 15 U.S.C. §§ 1692 e(11) and 1692g(a).) As a result of Riddle's violation of the Act, Snow claimed that he had suffered actual damages in an unspecified amount, which included his emotional distress over the letter, and, in addition, he asked for statutory damages in the amount of $1,000.00 as provided for by 15 U.S.C. § 1692k.

In his motion to dismiss, which was filed on November 19, 1996, Riddle stated that the complaint failed to state a claim upon which relief could be granted because the Act "does not cover the collection of dishonored checks, but rather is limited to the collection of debts resulting from transactions in which there is an offer or extension of credit . . . ." Sometime in February, 1997, Snow filed a memorandum in opposition to Riddle's motion to dismiss, and Riddle filed a reply thereto on February 24, 1997.

A hearing was held by the district court on Riddle's motion to dismiss on March 4, 1997, at the conclusion of which the district judge ruled, from the bench, as follows:

> This is a case of statutory interpretation. In deciding whether the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, governs collection activities arising out of a dishonored check, the court agrees with the reasoning of <u>Zimmerman v. HBO Affiliate Group</u>, 834 F.2d 1163 (3rd Cir. 1987). The type of transaction which may give rise to a debt as defined by the FDCPA is the same type of transaction that is dealt with in all other subchapters of the Consumer Credit Protection Act, namely one involving the offer or extension of credit to a consumer. Specifically, it is a transaction in which a consumer is offered or extended a right to acquire, money, property, insurance or services which are primarily for household purposes and to defer payment.
> In the present case, the plaintiff's obligation, which arose solely because of the dishonored check, does not fall within the scope of transactions covered by the FDCPA. This court accordingly follows the <u>Zimmerman</u> reasoning and the seven district court cases that have all come to the conclusion that a dishonored check is not a "debt" as defined within the meaning of the FDCPA. Accordingly, plaintiff's complaint fails to state a claim upon which relief can be granted . . . .

The district court's oral ruling of March 4, 1997 was followed by a signed order, dated March 12, 1997, incorporating therein the district court's oral ruling of March 4, 1997, and the district court on that date formally dismissed the complaint.

Discussion

15 U.S.C. § 1692 provides as follows:

**§ 1692. Congressional findings and declaration of purpose**

**(a) Abusive practices**

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

**(b) Inadequacy of laws**
Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

**(c) Available non-abusive collection methods**
Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

**(d) Interstate commerce**
Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

**(e) Purposes**
It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

As indicated, in granting Riddle's motion to dismiss the district court held that Snow's obligation, "which arose solely because of the dishonored check," did not fall within the "scope of transactions" covered by the Act. In so doing, the district court relied on, and "followed," the reasoning of *Zimmerman v. HBO Affiliate Group,* 834 F.2d 1163 (3rd Cir. 1987). *Zimmerman* did not involve a "dishonored check." But, as

indicated, it was the "reasoning" of *Zimmerman* that the district court in our case relied on.

In *Zimmerman*, certain cable television companies, by letter, demanded monetary compensation in settlement of asserted legal claims against persons whom the companies accused of having illegally received microwave television signals. In response to those letters, the recipients thereof brought suit against the cable television companies under the Act, alleging, *inter alia,* that the cable television companies, by their letters, were attempting to collect a "debt" through the use of practices prohibited by the Act. In affirming the district court's dismissal of the claims based on the Act, the Third Circuit spoke as follows:

> We find that the type of transaction which may give rise to a "debt" as defined in the FDCPA [the Act], is the same type of transaction as is dealt with in all other subchapters of the Consumer Credit Protection Act, i.e., one involving the offer or extension of credit to a consumer. Specifically it is a transaction in which a consumer is offered or extended the right to acquire "money, property, insurance, or services" which are "primarily for household purposes" and to defer payment.

So, *Zimmerman* did not involve a dishonored check, and the "reasoning" which the district court relied on in our case has since been rejected by various circuit courts in "dishonored check" cases.

At the time the district court in the instant case granted Riddle's motion to dismiss, there were no circuit court decisions on the matter, and rulings of district courts on the

- 7 -

question were mixed. However, since the district court's decision in the instant case, the Seventh, Eighth and Ninth Circuits have addressed the particular issue now before us, and each has held that a dishonored check under the circumstances of that particular case was within the scope of the Act. In addition, the Eleventh Circuit followed the rationale of the Seventh Circuit in declining to follow the *Zimmerman* reasoning in a case which did not involve a dishonored check. In their chronological order, those four cases are *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322 (7th Cir. 1997); *Charles v. Lundgren & Assoc.,* 119 F.3d 739 (9th Cir. 1997), *cert. denied,* ____ U.S. ____ (1997); *Brown v. Budget Rent-A-Car Systems, Inc.,* 119 F.3d 922 (11th Cir. 1997); and *Duffy v. Landberg,* 133 F.3d 1120 (8th Cir. 1998).

We shall first look at *Bass.* In that case, the Seventh Circuit, with Judge Bauer dissenting, held that a payment obligation arising from a dishonored check created a "debt" triggering the protections of the Act. In so doing, the Seventh Circuit, though agreeing with the result reached in *Zimmerman*, held that "an offer or extension of credit is not required for a payment obligation to constitute a 'debt' under the Act." Specifically, the Seventh Circuit stated that "to the extent that the *Zimmerman* court creates a requirement that only credit-based transactions constitute 'debt' under the FDCPA [Act], we must respectfully part ways." (Judge Bauer, in his dissent, stated he could not in conscience join "[t]he notion that Congress . . . had in mind the protection of

those who give bad checks for goods or services . . . .")[2]

*Charles, Brown* and *Duffy* all followed *Bass,* as do we.[3]  Under the "plain meaning" test, it would seem to us that a "debt" is created where one obtain goods and gives a dishonored check in return therefor.[4]

Conclusion

We reverse the judgment of the district court holding that a dishonored check, under the circumstances of the present case, does not constitute a "debt" within the purview of the Act.  We decline to consider other matters urged here by way of defense which were not considered or ruled on by the district court.  Case remanded for further proceedings consonant with the views herein expressed.

---

[2]Within a month after *Bass,* the Seventh Circuit in *Ryan v. Wexler,* 113 F.3d 91 (7th Cir. 1997) followed the teaching of *Bass* and held that the Act "governs collection activities related to dishonored checks."

[3]We note that in *Ditty v. CheckRite, Ltd. Inc.,* 973 F.Supp. 1320 (D. Utah, August 11, 1997) a different judge in the United States District Court for the District of Utah, relying on *Bass* and *Charles,* held that a dishonored check does constitute a "debt" for the purposes of the Act.

[4]15 U.S.C. § 1692a(5) provides as follows:
(5) The term "debt" means any obligatory or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.