**Sherri J. GRADISHER, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**CHECK ENFORCEMENT UNIT, INC., Defendant.**

**No. 1:00–CV–401.**

United States District Court, W.D. Michigan, Southern Division.

Feb. 28, 2001.

Louis R. Lint, Muskegon, MI, O. Randall Bragg, Chicago, IL, for plaintiff.

Donald L. Payton, Kaufman and Payton, Farmington Hills, MI, for defendant.

### OPINION

QUIST, District Judge.

On June 2, 2000, Plaintiff, Sherri J. Gradisher ("Plaintiff"), filed this proposed class action against Defendant Check Enforcement Unit, Inc. ("CEU"), claiming that certain activities of CEU violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692–1692o ("FDCPA") (First Claim), and its Michigan counterparts, the Michigan Collection Practices Acts, M.C.L. § 339.901–.920 and M.C.L. § 445.251–.258 ("MCPA") (Second Claim) (the FDCPA and the MCPA collectively, the "Acts").[1] Now before the Court is CEU's motion for summary judgment. For the reasons set forth below, CEU's motion will be denied.

### Facts

Muskegon County, Michigan (the "County") has an ordinance which prohibits, among other things, a person from uttering or delivering any check with the intent to defraud knowing at the time that the maker or drawer does not have sufficient funds on deposit to pay the check in full. Muskegon County Check Violation Ordi-

---

1. The relevant provisions of the Acts, which are numerous and lengthy, will be quoted only as necessary to resolve this motion.

nance § 3.A (1996). The refusal of the drawer of the check to pay the check "is prima facie evidence of intent to defraud and of knowledge of insufficient funds ... *provided such maker ... shall not have paid the drawee thereof the amount due thereon, together with all cost and protest fees, within five (5) business days after receiving notice that such check, draft or order has not been paid by the drawee.*" *Id.* § 3.C (emphasis added).

To assist in enforcing this ordinance, Muskegon County has entered into a written contract ("Contract") with CEU, a corporation organized under the Michigan Business Corporation Act. The Contract recognizes CEU as an independent contractor. The Contract provides that CEU shall "process, recover, investigate, and assist in the enforcement of dishonored checks in violation of 'applicable state laws or township ordinances' as submitted by merchants, businesses and citizens for violations occurring" within certain areas in the County not served by municipal police departments. (Contract ¶ 1, Def.'s Reply Br.Ex. B.) Merchants sign up to use Defendant's services by paying an $85.00 fee to CEU. Thereafter, if a check payable to one of these merchants is dishonored, the check is forwarded to Defendant, generally directly from a financial institution. Defendant then attempts to collect the amount of the check, plus a bank fee and a government assessment fee.

In addition to fees from merchants, CEU receives $21.50 from the County for each check that is paid to it. This money is deducted by the County from the $25.00 government assessment fee the County receives on each check. The County then submits the money to CEU.

Addendum IV to the Contract sets forth the three steps CEU is to take in its collection attempts:

*First:* Due Process Notice—5 day notice to establish intent to defraud a merchant

*Second:* Final Notice—outlines violation of criminal law

*Third:* Interview Notice—to be held at law enforcement agency

(Contract Addendum IV.) The County provides CEU with its stationary to mail out these forms. CEU composed the text of these notices, though the County reviewed the text when it signed the Contract. CEU admits mailing letters in the form of the Due Process Notice, the Final Notice, and the Interview Notice to more than 5,000 Michigan residents. (Def's Resp. Pl.'s First Discovery Request ¶ 63–65, Pl.'s Statement of Material Facts Ex. I.)

This case arises out of the activities of CEU relating to a bad check that Plaintiff wrote to a local steakhouse. CEU sent Plaintiff a Due Process Notice, Final Notice, and Interview Notice, requesting Plaintiff to submit to CEU two cashier's checks or money orders, one for the amount of the debt owed plus bank fees, which totaled $85.30, payable to Doug Born's Smokehouse, and another for $25.00, payable to Muskegon County, for a government assessment fee. Plaintiff alleges that these letters violated the Acts. In particular, Plaintiff alleges that CEU has violated the following: 15 U.S.C. §§ 1692e(1), (2)(4), (5), (9), (11), (14), 1692f(1), 1692g; and M.C.L. §§ 445.252(e), (f)(ii), (iii), (j), (s), 339.904, 339.915(c) and (d), and 339.918. (Verified Class Action Compl. ¶¶ 54–56.) CEU argues the Acts have no applicability to it because it is not a "debt collector" governed by the FDPCA, and that it is not a "regulated person," "collection agency" or "licensee" governed by the MCPA. CEU argues that it is simply acting on behalf of a law enforcement agency to recover an unfulfilled obligation of a bad check writer in order to avoid (1) a criminal prosecution of that person, and (2) attempts by the County to collect the debt.

### Analysis

#### A. *Federal Law.*

#### Is CEU a "debt collector" under the FDCPA?

15 U.S.C. §§ 1692e, 1692f, and 1692g apply only to a "debt collector." "Debt

collector" is defined in 15 U.S.C. § 1692a(6) as

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect directly or indirectly, debts owed or due or asserted to be owed or due another. . . . The term does not include . . . (C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties.

*Id.* The term "debt" is defined in 15 U.S.C. § 1692a(5) as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.*

CEU claims it is not a debt collector under the meaning of the FDCPA for three reasons. . First, it argues, "the focus of CEU's activity is not collection of a debt, since CEU does not pursue civil contractual obligations but, rather, criminal law enforcement. At no time does CEU seek to pursue the underlying obligation." (Def.'s Mot. for Summ.J. at 6.) In other words, CEU "is not collecting a debt." (*Id.* at 8.) Second, CEU argues, "the activities of Check Enforcement Unit are an exception to a debt collection act because they are pursuant to governmental authority." (*Id.* at 14.) Third, CEU argues, "Plaintiff has offered no evidence that the check written by her was written for personal, family or household purposes," (Def.'s Reply Br. at 3), as is required for a debt to be covered under the FDCPA.

CEU does in fact "seek to pursue the underlying obligation" and is in fact "collecting a debt" (using debt in its ordinary meaning, not necessarily as used in the FDCPA). (See, e.g., Johnson Dep., at 31–39, Pl's Statement of Material Facts Ex.

E. (CEU's sole business was the recovery of dishonored checks, which, when recovered, were forwarded to the merchant to whom the check was originally made out); Letter from CEU to Gradisher of 6/16/99, Def.'s Reply Br.Ex. D. ("You must send a cashier's check or money order to the Law Enforcement Processing Center [being another name for CEU (Johnson Dep. at 28)] for the CHECK TOTAL"); Letter from CEU to Gradisher of 6/30/99, Def.'s Reply Br.Ex. D. (same language); Letter from CEU to Gradisher of 7/14/99, Def.'s Reply Br.Ex. D ("If payment is received by the Processing Center prior to the scheduled interview date, your appearance will not be required")). Whether one calls CEU's efforts "recovery" or "collection" makes no difference—CEU engaged in the collection of checks which had been paid to merchants and had not cleared the check writer's bank and, if this amount was recovered, forwarded it to the merchant.

The collection of the amount owed to another because of a bad check is debt collection under the FDCPA. *See Broadnax v. Greene Credit Serv.,* No. 95–3829, 1997 WL 14777, at *4 (6th Cir. Jan. 15, 1997) (per curiam) (reversing magistrate judge's ruling that debt was not covered by the FDCPA, and stating that a debt collector's efforts to falsely and intentionally accuse a person of fraudulently negotiating a bad check "would, if proved, unquestionably constitute a species of behavior by a consumer debt collection agent which Congress intended to deter [under the FDCPA]"); *Snow v. Jesse L. Riddle, P.C.,* 143 F.3d 1350, 1353 (10th Cir.1998) (" 'debt' is created where one obtain[s] goods and gives a dishonored check in return therefor"); *Duffy v. Landberg,* 133 F.3d 1120, 1123 (8th Cir.1998) ("abusive collection practices related to the dishonored check are prohibited by the FDCPA"); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322, 1323 (7th Cir.1997) (dishonored check is a debt within meaning of the FDCPA); *Charles v. Lund-*

*gren & Assocs., P.C.,* 119 F.3d 739, 740 (9th Cir.1997) (same); *Newman v. Checkrite Cal., Inc.,* 912 F.Supp. 1354, 1364 n. 7 (E.D.Cal.1995) (same); *Irwin v. Mascott,* 112 F.Supp.2d 937, 947 (N.D.Cal. 2000) (collection letter meant to collect bad checks, which do not follow FDCPA procedures, violate the FDCPA). This rule holds even when consumers write checks knowing they will be dishonored. *See Keele v. Wexler,* 149 F.3d 589, 595–96 (7th Cir.1998); *Irwin v. Mascott,* 96 F.Supp.2d 968, 976 (N.D.Cal.1999). *See also Bass,* 111 F.3d at 1329 (rejecting defendants' argument that dishonored checks do not constitute debt under the FDCPA because " 'the tender of a worthless check is a criminal and tortious act' ") (quoting Defs.' Br. at 13).

Furthermore, CEU is not simply a "mailing service" that "receives no money from debtors, does not follow up debt collection letters ... maintains no files on the debts ... or instruct the debtor to contact [CEU]", *Trull v. Lason Sys., Inc.,* 982 F.Supp. 600, 603 (N.D.Ill.1997), or merely engaged in "label merging, letter printing, and mass mailing activities", *Laubach v. Arrow Serv. Bureau, Inc.,* 987 F.Supp. 625, 630 (N.D.Ill.1997).

CEU contends it is subject to the government exception to the FDCPA contained in 15 U.S.C. § 1692a(6)(C), which provides that the term "debt collector" does not include "any officer or Employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties." As support for this proposition CEU cites *Heredia v. Green,* 667 F.2d 392 (3d Cir.1981), *Gary v. Spires,* 473 F.Supp. 878 (D.S.C.1979), and *Games v. Cavazos,* 737 F.Supp. 1368 (D.Del.1990). Neither *Heredia* nor *Gary* has application in the instant case because in both those cases the defendants were state employees acting in their official capacities. *See Heredia,* 667 F.2d at 393–96; *Gary,* 473 F.Supp. at 881–84. Here CEU is not an employee of the government but is an independent contractor. (Contract ¶ 10(c) ("CEU understands and agrees that its

status is that of an Independent Contractor, and shall in no way be construed as an ... employee of County").)

*Games,* however, does have potential applicability to CEU's situation. In *Games,* the court held that USA Funds, a nongovernmental organization which administered federal student loans, was exempt from the FDCPA under 15 U.S.C. § 1692a(6)(C). Though USA Funds was not an employee or agency of a government, the court noted that like the defendant Landlord and Tenant Officer in *Heredia,* "USA Funds had no discretion as to the content of the notices." 737 F.Supp. at 1388. Accordingly, the court held that "USA Funds' sending of these notices under the direction of [the United States Department of Education] is analogous to the [Landlord and Tenant] Officer's performance of his 'official' duties at the behest of the President Judge [a superior of the Landlord and Tenant Officer]." *Id.* As further bases for its ruling, the court noted that USA Funds administered a federal government program and functioned as a governmental actor would have; that its primary purpose was administration of the Guaranteed Student Loan Program; that USA Funds did not engage in abusive tactics; and that "unlike a typical debt collector, USA Funds is involved with Guaranteed Student Loans from the moment the loan is made." *Id.* at 1388–89.

In *Brannan v. United Student Aid Funds, Inc.,* 94 F.3d 1260 (9th Cir.1996), however, the Ninth Circuit ruled that USA Funds is subject to the FDCPA. It rejected USA Funds' argument that it was exempt under 15 U.S.C. § 1692a(6)(C): " '[W]here a statute names the parties which come within its provisions, other unnamed parties are excluded.' This exemption [15 U.S.C. § 1692a(6)(C)] applies only to an individual government official or employee.... USA Funds is a private nonprofit organization with a government contract ... not a government agency or employee." *Brannan,* 94 F.3d at 1263 (alteration in original) (quoting *Foxgord v.*

*Hischemoeller,* 820 F.2d 1030, 1034 (9th Cir.1987)). Moreover, in *Pollice v. National Tax Funding, L.P.,* 225 F.3d 379 (3d Cir.2000), the court quoted *Brannan* and held that the 15 U.S.C. § 1692a(6)(C) exemption "does not extend to those who are merely in a contractual relationship with the government." *Id.* at 406.

█ This Court agrees with *Brannan* and *Pollice* that an independent contractor is not entitled to an exemption to the FDCPA pursuant to 15 U.S.C. § 1692a(6)(C). In this situation, where the language of the statute is clear, policy arguments have no place; if the legislature had intended to allow independent contractors, rather than just government agencies and employees, to escape liability under the FDCPA, it could have explicitly stated as much. Since it did not, however, this Court follows the express language of the statute and holds that independent contractors are not exempt from the FDCPA pursuant to 15 U.S.C. § 1692a(6)(C). *See Brannan,* 94 F.3d at 1263.

CEU also argues that it is not subject to the FDCPA because no proof has been offered by Plaintiff that the debt in question was made for "personal, family or household purposes." CEU did not raise this argument in its Motion for Summary Judgment but in its Response to the Plaintiff's Memorandum in Opposition. As such, this argument is not properly before the Court at this time, and will not be considered. *See 60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987) ("The moving party has the burden of showing conclusively that no genuine issue of material fact exists."). Furthermore, paragraph 7 of Plaintiff's Complaint alleges that the check was written for personal, family, or household purposes, and Plaintiff swore to the accuracy of the Complaint. (Verified Class Action Compl. at ¶ 7.) For these reasons, CEU has not shown conclusively that no genuine issue of material fact exists as to this issue.

### B. State Law

#### Is CEU a "regulated person," a "collection agency," or a "licensee" under the MCPA?

M.C.L. § 445.252 applies only to a "regulated person." "Regulated person" is defined in M.C.L. § 445.251(g) as "a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency including the following: ... (x) A public officer or a person acting under court order." *Id.*

M.C.L. §§ 339.904 and 339.918 apply only to a "collection agency." A "collection agency" is defined in M.C.L. § 339.901(b) as

a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be owed or due another.... Collection agency does not include a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency such as but not limited to, the following: ... (x) A public officer or person acting under a court order.

*Id.*

M.C.L. § 339.915(c) and (d) apply only to a "licensee." While "licensee" is not defined, it is clear from the context that "licensee" refers to a licensed collection agency: "Except as otherwise provided in this article, a person shall not operate a collection agency or commence in the business of a collection agency without first applying for and obtaining a license from the department for each place of business." M.C.L. § 339.904(1).

The Court notes that under the MCPA, CEU is either a regulated person or a licensee; the definition of "regulated person" contained in M.C.L. § 445.251(g) contains the same language that M.C.L. § 339.901(b) includes to describe parties whose collection activities mean that they are not a "collection agency." Therefore,

under the MCPA, anyone who collects debts is either a "collection agency" or a "regulated person." Under the definitions of these terms CEU could conceivably be classified as either a "collection agency" or a "regulated person," and no precedent has been found from Michigan cases which would lead this Court to definitively classify CEU as one or the other.

The difficulty of classifying CEU's status under the MCPA is further muddled by the existence of a letter from the Michigan Department of Commerce to CEU, informing CEU that it is not required to be licensed under the MCPA, meaning that it does not fall within the definition of a "collection agency." (Letter of 5/24/95 from J. Montgomery to A. Johnson, Def.'s Mot. for Summ.J.Ex. 9.) This letter specifically notes that "this determination is based upon the Department's review of documentation received from interested parties and obtained from you" and is therefore premised upon the assumption "that the activities of Check Enforcement Unit Inc. are as represented in such materials." *Id.* This Court is not certain what level of deference to give this interpretation in a situation such as this, where no evidence has currently been submitted as to the representations made to the Department of Commerce. Furthermore, while the Michigan Supreme Court "ordinarily accords an agency's longstanding interpretation of a statute due deference, .... An agency interpretation cannot overcome the plain meaning of a statute." *Consumers Power Co. v. Mich. Pub. Serv. Comm'n,* 460 Mich. 148, 157, 596 N.W.2d 126, 132 (1999). Because it is conceivable that a Michigan court could rule that under the plain language of the MCPA, CEU is in fact a "collection agency," it is not proper for this Court to rule that CEU is not a "collection agency" on the basis of the letter to CEU from the Department of Commerce.

The Court also finds that a determination of whether CEU is a "licensee" under the MCPA is a novel issue of state law. While CEU was not a "licensee" in the sense of actually possessing a license, and

the Court finds it doubtful that a Michigan court would hold that CEU will be considered a licensee (since such an interpretation would appear to run contrary to the language of the statute), this precise issue has not been addressed by Michigan courts, and it is conceivable that a Michigan court could rule either way.

In any event, this Court finds that the state law issues are novel and complex enough that this Court should decline to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(1) Court recognizes that the parties might have to pursue overlapping paths in state court and in this Court, but this Court also notes that the state claims merely raise additional legal theories of recovery for the same alleged wrongdoing and seek essentially the same scope of relief that could be granted by this Court. Furthermore, the doctrines of claim and issue preclusion would bar inconsistent findings of fact and allow federal courts to make legal rulings on federal claims and state courts to make legal rulings on state claims. Thus, comity is recognized by this Court's refusal to hear the state claims.

### *Conclusion*

This Court cannot currently say that CEU is not a "debt collector" under the FDCPA. Therefore, CEU's motion for summary judgment will be denied. Plaintiff's state law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(1). An Order consistent with this Opinion will be entered.